**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SABIL M. MUJAHID,
　　　　　*Petitioner-Appellant,*

v.

CHARLES A. DANIELS, Warden,
　　　　　*Respondent-Appellee.*

No. 03-36038

D.C. No.
CV-02-01719-GMK/
JMS

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
April 11, 2005—San Francisco, California

Filed June 27, 2005

Before: Robert R. Beezer, Sidney R. Thomas, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Beezer

## COUNSEL

Stephen R. Sady, Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Kenneth C. Bauman and Craig J. Casey, Assistant United States Attorneys, Portland, Oregon, for the respondent-appellee.

## OPINION

BEEZER, Circuit Judge

Sabil Mujahid appeals the denial of his 28 U.S.C. § 2241 petition for a writ of habeas corpus, challenging the Bureau of Prisons' ("BOP" or "Bureau") interpretation of the maximum good time credit a federal prisoner can receive under 18 U.S.C. § 3624(b). Mujahid asserts that the Bureau's interpretation, which allows a prisoner serving a ten-year sentence to earn a maximum of 470 days credit, contradicts the statute's stated allowance of 54 days of credit per year. We affirm.

## I

The facts relevant to this appeal are not in dispute. In 1995, the United States District Court for the District of Alaska sentenced Mujahid to ten years imprisonment, plus three years supervised release, upon his conviction under 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). He began his term in custody on March 21 of that year.

In 2002, while incarcerated at the Federal Correctional Institution in Sheridan, Oregon ("FCI-Sheridan"), Mujahid filed this challenge to the Bureau's interpretation of the good time statute. Mujahid's petition, which he filed in the District of Oregon, named as respondent the warden at FCI-Sheridan. The magistrate judge reviewing the petition disagreed with the assertion that the Bureau's interpretation deprived Mujahid of good time credit. The district court adopted the magistrate judge's Findings and Recommendations (with one modification not relevant here) and denied Mujahid's petition on November 4, 2003. Mujahid timely appealed.

The government represents that Mujahid began his three-year term of supervised release on January 6, 2004.[1]

## II

As an initial matter, we determine whether events subsequent to the district court's denial of Mujahid's petition deprive this court of jurisdiction or render this appeal moot. The government contends that Mujahid's placement onto supervised release prevents us from providing any relief. We disagree.

---

[1]At oral argument, Mujahid's counsel stated that he believed Mujahid has since been returned to prison for violating his terms of supervised release. Our analysis is not contingent on this fact.

## A

The government's first contention, marginally raised in its briefing and argued at length during oral argument, is that we lack jurisdiction over this appeal because Mujahid is no longer imprisoned by the named respondent-warden.[2] Established principles of habeas procedure suggest otherwise.

**[1]** When Mujahid filed his petition, he was incarcerated in Oregon. He filed his petition in district court, in the District of Oregon. He named as respondent the warden of the institution where he was imprisoned. These steps properly complied with habeas procedure. *See Rumsfeld v. Padilla*, 124 S. Ct. 2711, 2720 (2004). Mujahid's subsequent transfer and placement onto supervised release do not alter this analysis. As the government recognizes, a habeas petitioner remains in the custody of the United States while on supervised release. *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002). And as we stated in *Francis v. Rison,* 894 F.2d 353, 354 (9th Cir. 1990) (internal quotation marks and citations omitted), "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."

## B

The next government challenge asserts mootness. "The burden of demonstrating mootness is a heavy one." *Cantrell v.*

---

[2]We are unconvinced by the government's assertion that this argument cannot be waived. *See, e.g., Rumsfeld v. Padilla*, 124 S. Ct. 2711, 2717 n.7 (2004) (referring to jurisdiction "in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court"); *id.* at 2728 (Kennedy, J., concurring) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government."); *see also Smith v. Idaho*, 392 F.3d 350, 354-56 (9th Cir. 2004).

*City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). The government has not met that burden.

**[2]** An appeal is moot "when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." *Calderon v. Moore,* 518 U.S. 149, 150 (1996) (per curiam) (citation and internal quotation marks omitted). Failure to satisfy Article III's case-or-controversy requirement renders a habeas petition moot. *Spencer v. Kemna,* 523 U.S. 1, 7 (1998). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (citation and internal quotation marks omitted).

The government argues that we are unable to provide any relief to Mujahid because he completed his term of imprisonment and was placed on supervised release. The government relies on *United States v. Johnson*, 529 U.S. 53, 54 (2000), to support its position. We agree that *Johnson* holds that a prisoner who wrongfully serves excess prison time is not entitled to an automatic reduction in his term of supervised release. *Id.* at 60. But our post-*Johnson* precedent does not support construing *Johnson* in the manner advocated by the government.

**[3]** We addressed this very issue in *Gunderson v. Hood*, 268 F.3d 1149, 1153 (9th Cir. 2001). Although the petitioner in *Gunderson* challenged an agency practice affecting the length of his sentence, we recognized that the court was unable to order any reduction in prison time because he would not be eligible for such relief until his term of imprisonment expired. We held this fact did not render the petition moot, however, because the petitioner's sentence included a term of supervised release. The "possibility" that the sentencing court would use its discretion to reduce a term of supervised release under 18 U.S.C. § 3583(e)(2) was enough to prevent the petition from being moot. *Id.; see also United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir. 2001) (holding a defendant on

supervised release retained a personal stake in the appeal of his sentence because, if he prevailed, "he could be resentenced to a shorter period of supervised release").

[4] *Gunderson* controls our mootness inquiry. There "is a possibility" that Mujahid could receive a reduction in his term of supervised release under 18 U.S.C. § 3583(e)(2). 253 F.3d at 1153. *Gunderson* does not require more.

The government's attempt to distinguish *Gunderson* is unavailing. The government maintains that the *Gunderson* petitioner, unlike Mujahid, sought habeas relief in the same court in which he was originally sentenced. This supposed fact allegedly differentiates *Gunderson* because Mujahid's habeas court (in the District of Oregon) has no control over the decision to modify the supervised release terms, which rest with the sentencing court (in the District of Alaska).

We cannot accept this argument. Gunderson, like Mujahid, followed general habeas procedure in naming as respondent the warden of the prison where he was incarcerated at the time of filing his petition. *Gunderson*, 268 F.3d at 1152-53; *see also Padilla*, 124 S. Ct. at 2720. The *Gunderson* opinion does not state that the petitioner was seeking habeas relief before the same court in which he was sentenced, and there is no indication that its mootness analysis turned on such a fortuitous occurrence.[3]

---

[3]We note another potential flaw in the government's argument. Under even the government's interpretation of *Gunderson*, this petition would not be moot in Mujahid's sentencing court in the District of Alaska. *See* 268 F.3d at 1153. The government has not explained why an appellate court in our position could not order Mujahid's petition transferred to that court, if we were so inclined. *See, e.g., Gherebi v. Bush*, 374 F.3d 727, 739 (9th Cir. 2004) ("exercising jurisdiction" over habeas petition and "transferring the proceedings to the appropriate forum," citing district court transfer of venue statutes, 28 U.S.C. §§ 1404, 1406).

## C

**[5]** Mujahid filed his habeas petition in the proper district court, naming the proper respondent. *See Padilla,* 124 S. Ct. at 2718. He remains in "custody" for habeas purposes. *Matus-Leva,* 287 F.3d at 761. His petition asserts an injury due to the duration of his sentence and seeks relief through a possible reduction of his term in custody. *Gunderson*, 268 F.3d at 1153. This appeal is properly before us and is not moot.

## III

We now turn to the merits of Mujahid's challenge to the BOP's interpretation of the federal good time statute, 18 U.S.C. § 3624(b). Mujahid asserts that the BOP's interpretation erroneously reduces the amount of good time credit available on a ten-year sentence from 540 to 470 days. Although Mujahid's reading of the statute is arguably plausible, we have previously held that the BOP's contrary interpretation is reasonable and subject to deference. *Pacheco-Camacho v. Hood,* 272 F.3d 1266, 1270 (9th Cir. 2001). This determination is controlling.

## A

**[6]** At issue in this appeal is the 1995[4] version of 18 U.S.C. § 3624(b)(1), which states in relevant part (emphasis added):

> (b)   Credit toward service of sentence for satisfactory behavior.—

> (1)   A prisoner . . . who is serving a term of imprisonment of more than one year, other than a term of imprisonment for the duration of the prisoner's life,

---

[4]We quote from the version of this statute in effect in 1995, when Mujahid was convicted. Both parties agree that this version of the statute controls for purposes of Mujahid's appeal.

*shall receive credit toward the service of the prisoner's sentence, beyond the time served, of fifty-four days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term,* unless the Bureau of Prisons determines that, during that year, the prisoner has not satisfactorily complied with . . . institutional disciplinary regulations. . . . The Bureau's determination [of satisfactory compliance] shall be made within fifteen days after the end of each year of the sentence. Credit that has not been earned may not later be granted. Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

The Bureau and Mujahid disagree on whether "term of imprisonment" as used in the italicized portion of the statute means *time actually served* (BOP interpretation) or *sentence imposed* (Mujahid interpretation). The BOP implementing regulation provides:

Pursuant to 18 U.S.C. 3624(b), as in effect for offenses committed on or after November 1, 1987 but before April 26, 1996, an inmate earns 54 days credit toward service of sentence (good conduct time credit) for *each year served*. This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year.

28 C.F.R. § 523.20 (emphasis added).[5]

**[7]** In accordance with this regulation and the Bureau's applicable Program Statement, a prisoner does not "earn"

---

[5]Mujahid waived any possible argument about this regulation's applicability to Mujahid's sentence by not raising the issue in his briefing. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005).

good time credit until after serving that time. *See* Federal Bureau of Prisons Program Statement 5880.28 (Feb. 21, 1992). To earn 54 days of credit, a prisoner must first complete 365 days of incarceration. The BOP prorates awards during the last year that a prisoner is incarcerated, awarding 0.148 days credit [54/365 = 0.148] per day *actually served* that year. *See Pacheco-Camacho,* 272 F.3d at 1267-1268.

Under these calculations, Mujahid accumulated 432 days of credit over eight years [(54 days/year) x (8 years) = 432]. Because Mujahid had enough credit to qualify for release during his ninth year in prison, the BOP prorated the amount of credit he could earn that partial year, awarding 38 days. Mujahid received no credit for the tenth year of his sentence, when he was not in prison.

Mujahid, in contrast, reads this statute as awarding good time credit based on the *sentence imposed.* Using the straightforward calculation of 54 days per year multiplied by ten years, Mujahid argues that he was entitled to 540 days of credit. To avoid awarding credit for time not served, Mujahid essentially starts counting toward the next "year" of imprisonment every 311 days.[6]

The end result is that, over a ten-year sentence, Mujahid's interpretation enables a prisoner to earn 70 more days of credit than allowed by the BOP.

## B

This dispute turns on whether we accept the BOP's inter-

---

[6]As Mujahid calculates the good time credit, the "year of the prisoner's term of imprisonment" ends once the number of days served plus the good time credit for that year equals 365. In other words, one year ends after approximately 311 days (365-54); two years after 622 days [(365 x 2) - (54 x 2)], and ten years after 3,112 days [(365 x 10) - (54 x 10)] (Leap years excluded).

pretation of the phrase "term of imprisonment" to mean "time served." "Because this case involves an administrative agency's construction of a statute that it administers, our analysis is governed by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000); *accord Pacheco-Camacho,* 272 F.3d at 1268. Under the *Chevron* framework, a reviewing court first determines if " 'Congress has directly spoken to the precise question at issue,' in such a way that 'the intent of Congress is clear.' " *Pacheco-Camacho*, 272 F.3d at 1268 (quoting *Chevron*, 467 U.S. at 842). If the statute is silent or ambiguous, the court decides "whether the agency's interpretation 'is based on a permissible construction of the statute.' " *Id.* (quoting *Chevron*, 467 U.S. at 843).

[8] In *Pacheco-Camacho*, we held that the BOP's interpretation of 18 U.S.C. § 3624(b) is entitled to full *Chevron* deference. At issue in *Pacheco-Camacho* was the BOP's policy for prorating the good time credit of a prisoner sentenced to one year plus a day imprisonment. We first determined that the phrase "term of imprisonment" as used in § 3624(b) is ambiguous, observing that to read "term of imprisonment" as "sentence imposed" would be inconsistent with a statute that contemplates prorating credit for the last year of imprisonment. *Id.* at 1268. We also concluded that the Bureau's interpretation was supported by legislative history indicating an attempt to "strike a balance between simplicity and fairness" by calculating credits in a consistent manner and prorating credits to ensure that those who served more time were eligible for more credit. *Id.* at 1270. We relied on these same reasons to hold that the BOP's interpretation of "term of imprisonment" as "time served" was reasonable. *Id*. at 1271.

[9] Mujahid's interpretation of § 3624(b) is at odds with *Pacheco-Camacho*'s holding that the BOP's interpretation is reasonable and subject to deference. We are bound by *Pacheco-Camacho*'s holding unless (1) the issue presented

here is sufficiently distinguishable or (2) binding authority casts sufficient doubt on the validity of *Pacheco-Camacho*'s analysis to allow us to disregard its reasoning. We are unconvinced on both fronts.

**1**

Mujahid's attempts to distinguish *Pacheco-Camacho* are unpersuasive. Mujahid would limit *Pacheco-Camacho* to solely addressing the meaning of "term of imprisonment" as it relates to prorating credits during the last year of a prisoner's sentence. He asserts that his petition differs because he challenges the BOP's calculation of good time credits overall. But so did Pacheco-Camacho. In fact, Pacheco-Camacho made the same argument and used the same provision for support. Like Mujahid, Pacheco-Camacho argued that "when the statute awards fifty-four days 'at the end of each year of the prisoner's term of imprisonment,' this award should be based on the sentence imposed, without regard to the time actually served." *Id.* at 1268. Our rejection of Pacheco-Camacho's position indicates that our holding was not as limited as Mujahid contends.

Mujahid's assertion that *Pacheco-Camacho* controls the meaning of "term of imprisonment" only in the context of prorating credit is problematic for another reason as well. Under even this most narrow reading of *Pacheco-Camacho*, that decision still holds that the BOP's interpretation of "term of imprisonment" in the last sentence of § 3624 as "time served" is reasonable. *See id.* at 1270-71. Mujahid does not explain how, given this precedent, interpreting "term of imprisonment" differently (i.e., as "sentence imposed") earlier in the same statute is any more consistent with rules of intrastatutory interpretation than the interpretation given by the Bureau.

**2**

Besides attempting to limit the reach of *Pacheco-Camacho*, Mujahid argues that subsequent Supreme Court cases have undermined *Pacheco-Camacho*'s "mode of reasoning." Mujahid asserts that recent cases suggest that *Pacheco-Camacho* erred in not applying the rule of lenity before applying *Chevron* deference. For one three-judge panel to disregard prior binding authority, "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). Mujahid has not persuaded us that we are faced with such a situation here.**⁷**

**[10]** *Pacheco-Camacho* holds that the rule of lenity "does not prevent an agency from resolving statutory ambiguity through a valid regulation." 272 F.3d at 1271. We cited Supreme Court precedent for support. *See Babbitt v. Sweet Home Chapter of Cmtys. for a Great Oregon*, 515 U.S. 687, 704 n.18 (1995) ("We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement."). We explained that our decision comported with the rule's purpose as well. Specifically, the rule of lenity is designed to "ensure[ ] that the penal laws will be sufficiently clear, so that individuals do not accidentally run afoul of them and courts do not impose prohibitions greater than the legislature intended." *Pacheco-Camacho*, 272 F.3d at 1271. Regulations such as the one at issue here "gives the public sufficient warning to ensure that

---

**⁷***See also O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir. 2005) (per curiam) (citing *Pacheco-Camacho* in rejecting petitioner's rule of lenity analysis); *Perez-Olivio v. Chavez*, 394 F.3d 45, 53 (1st Cir. 2005) (rejecting rule of lenity argument); *but cf. Dolfi v. Pontesso*, 156 F.3d 696, 700 (6th Cir. 1998) (declining to apply *Chevron* deference to a Parole Commission interpretation of a different statute).

nobody mistakes the ambit of the law or its penalties." *Id.* at 1272. We also noted that the Supreme Court has applied *Chevron* deference in construing another BOP-administered statute affecting prison terms. *See id.* (citing *Lopez v. Davis*, 531 U.S. 230, 242 (2001)).

**[11]** We cannot say that binding authority has "undercut" this analysis. By collecting assorted passages from recent Supreme Court opinions, Mujahid creates an argument that is tenuous at best and requires us to fill in more blanks than we are willing to do. In particular, neither *Leocal v. Ashcroft*, 125 S. Ct. 377 (2004), nor *Clark v. Martinez*, 125 S. Ct. 716 (2005), address the relationship of *Chevron* deference to the rule of lenity. Rather, both cases reference the rule of lenity in dicta concerning unrelated points. *See Leocal*, 125 S. Ct. at 384 n.8 (stating that "consistency" requires applying the rule of lenity to a statute that has both criminal and noncriminal applications); *Clark*, 125 S. Ct. at 724 (citing the reference to the rule of lenity in *Leocal* and *United States v. Thompson/ Center Arms Co.*, 504 U.S. 505, 517-18 and n.10 (1992) (plurality opinion), in stating that the "lowest common denominator" governs when construing statutory language with more than one application).

The language cited in these cases supports that the rule of lenity can play an important role in statutory construction; it does not address when the rule of lenity takes priority over *Chevron* deference. And, ultimately, it is the answer to this question that Mujahid must convince us has been provided, or most assuredly would be provided, by the Supreme Court in a manner "irreconcilable" with *Pacheco-Camacho.* The cases relied on by Mujahid do not do so.

## IV

*Pacheco-Camacho* established that the phrase "term of imprisonment" in 18 U.S.C. § 3624(b)(1) is ambiguous, that the BOP's interpretation was reasonable, and is thus entitled

to deference. Mujahid's position rests on an interpretation of this statute at odds with binding authority of this court.[8]

**AFFIRMED.**

---

[8]Mujahid fashioned his initial filing before this panel as both an opening brief and a petition for initial hearing en banc, should we conclude that *Pacheco-Camacho* is controlling. Our denial of Mujahid's petition on the present record is without prejudice to review on a timely basis.