# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ISMAEL TABLADA,
                    *Petitioner-Appellant,*

            v.

J.E. THOMAS,* Warden, Federal
Correction Institute, Sheridan,
Oregon,
                    *Respondent-Appellee.*

No. 07-35538

D.C. No.
CV 06-00762-MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
March 7, 2008—Portland, Oregon

Filed July 3, 2008

Before: Marsha S. Berzon and Carlos T. Bea, Circuit Judges,
and Philip S. Gutierrez,** District Judge.

Opinion by Judge Gutierrez

---

*J.E. Thomas is substituted for his predecessor Charles Daniels
as Warden of the Federal Correction Institute, Sheridan, Oregon. Fed. R.
App. P. 43(c)(2).

**The Honorable Philip S. Gutierrez, United States District Judge for
the Central District of California, sitting by designation.

**COUNSEL**

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for petitioner-appellant Ismael Tablada.

Karin J. Immergut, United States Attorney, Scott E. Asphaug, Assistant United States Attorney, and Kelly A. Zusman, Assistant United States Attorney, Portland, Oregon, for the respondent-appellee.

**OPINION**

GUTIERREZ, District Judge:

In this appeal, we consider whether the Bureau of Prisons ("BOP") violated the Administrative Procedure Act ("APA")

in promulgating 28 C.F.R. § 523.20, the regulation interpreting 18 U.S.C. § 3624(b), which governs the calculation of good conduct time for federal prisoners. The district court held that the BOP's interpretation in § 523.20 was reasonable and that it did not violate § 706(2)(A) of the APA. Accordingly, the district court denied the petitioner's habeas petition which challenged the BOP's calculation of the length of time the petitioner had left to serve on his sentence. The BOP has conceded it violated § 706(2)(A) of the APA by failing to articulate a rational basis for its decision to promulgate § 523.20. We hold that the remedy for this violation is to interpret the federal statute in accordance with the BOP's Program Statement 5880.28, and so affirm.

## I.  BACKGROUND & PROCEDURE

Ismael Tablada is an inmate at the Federal Correctional Institute in Sheridan, Oregon. Tablada was convicted of a narcotics offense in the District of Minnesota. On December 17, 1990, he was sentenced to a 20-year term of imprisonment, followed by 10 years of supervised release. As of February 2007, Tablada's projected release date, taking into consideration his good time credit, was April 16, 2008.[1]

On October 31, 2006, Tablada filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In the petition, Tablada challenges the BOP's calculation of good time credits pursuant to the good time credit statute, 18 U.S.C. § 3624(b). Tablada contends that in promulgating its method for calculation of good time conduct credit in 28 C.F.R. § 523.20 and Program Statement 5880.28, Sentence Computa-

---

[1]Tablada's projected release date has passed. This fact, however, does not render his appeal moot because his sentence includes a term of supervised release. *See Mujahid v. Daniels*, 413 F.3d 991, 994-995 (2005) ("The 'possibility' that the sentencing court would use its discretion to reduce a term of supervised release under 18 U.S.C. § 3583(e)(2) was enough to prevent the petition from being moot").

tion Manual (CCCA of 1984), the BOP failed to articulate a rational basis for its interpretation of the federal statute, thus violating 5 U.S.C. § 706(2)(A).[2]

A. *Good Time Credit Statute, 18 U.S.C. § 3624(b)*

Title 18 U.S.C. § 3624 governs the timing of federal prisoners' release from custody. Section 3624(b) provides in relevant part:

> (b) Credit toward service of sentence for satisfactory behavior.—
>
> (1)    . . . a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's *term of imprisonment*, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b)(1) (emphasis added).

---

[2]Tablada's habeas corpus petition also claimed the BOP regulation and Program Statement are invalid because they violate the APA, 5 U.S.C. § 553, which requires a notice and comment period, and the Ex Post Facto Clause. The district court rejected both claims. Tablada has abandoned these claims by failing to raise them in his brief on appeal. *See Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007).

B.   *BOP Program Statement and Regulation*

Since the passage of 18 U.S.C. § 3624(b) in 1984, the BOP has interpreted good time credit to be based on the *time served* by the prisoner. In November 1988, the BOP's general counsel issued an internal memorandum advising staff of the procedures for awarding good time credits under § 3624(b). The memorandum recited the text of § 3624(b), and stated that "good conduct time is earned on sentences of 1 year and 1 day or more at a rate of 54 days for each year of *time served*." (emphasis added). In February 1992, BOP formalized this interpretation of § 3624 via the BOP Program Statement 5880.28.

In September 1997, the BOP published for comment as an interim rule 28 C.F.R. § 523.20, which was the BOP's interpretation of § 3624(b). 62 Fed. Reg. 50786-01 (Sept. 26, 1997). The commentary to the interim rule stated that "[t]he awarding and vesting of good conduct time at a rate of 54 days per year (prorated when the time served by the inmate for the sentence during the year is less than a full year) ha[s] been clearly stated by statute since the implementation of the Sentencing Reform Act of 1984." *Id.* at 50786. The BOP received no public comments, and, in 2003, published a change to the proposed rule and again accepted comments. 68 Fed. Reg. 37776-01 (June 25, 2003). On December 5, 2005, 28 C.F.R. § 523.20 became final. 70 Fed. Reg. 66752-01 (Nov. 3, 2005). 28 C.F.R. § 523.20 provides:

> (a) For inmates serving a sentence for offenses committed on or after November 1, 1987, but before September 13, 1994, the Bureau will award 54 days credit toward service of sentence (good conduct time credit) *for each year served.* This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year.

28 C.F.R. § 523.20(a) (emphasis added).**³**

In accordance with the BOP's regulatory scheme, the prisoner does not earn the first 54 days of good time credit until *after* completing 365 days of incarceration. *Mujahid*, 413 F.3d at 996. During the last year of incarceration, the BOP prorates the good time credits, awarding the prisoner 0.148 days credit [54/365 = 0.148] for every day actually served that year. *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1267-1268 (9th Cir. 2001). The BOP's admittedly "complicated" mathematical formula yields, for a model federal prisoner with a 10-year sentence, a maximum of 470 days of good time credit, which includes no credit when the prisoner is not in prison. *Id.* at 1269.

The BOP's interpretation of the good time conduct statute led to the filing of numerous lawsuits by federal prisoners. Like Tablada, these prisoners contested the methodology by which the BOP computes good time credit under § 3624(b)(1), reading the statute as awarding good time credit based on the *sentence imposed* rather than the *time served*. Under their interpretation, a model federal prisoner with a 10-year sentence would be entitled to 540 days of credit [54 days/yr x 10yrs = 540], rather than the 470 days awarded under the BOP's method. Faced with these competing interpretations of § 3624(b), we have upheld the validity of the BOP's interpretation of "term of imprisonment" in § 3624(b) as meaning time served rather than sentence imposed. *See Pacheco-Camacho*, 272 F.3d at 1271.

In *Pacheco-Camacho*, we noted that § 523.20 was adopted through the APA's notice-and-comment procedure, and that

---

**³**This version of 28 C.F.R. § 523.20 is different from the version quoted by the district court in his order. The district court used a previous version of the regulation which was effective until December 4, 2005. However, the distinctions between the previous version and the amended regulation, quoted here, do not affect the analysis.

the BOP's interpretation of § 3624(b) via § 523.20 was therefore entitled to full *Chevron* deference.[4] *Id.* at 1268 (citing *Chevron*, 467 U.S. 837). Applying the first step of the *Chevron* analysis, we looked at both the plain language of the statute and its legislative history, and found that the meaning of "term of imprisonment" as used in § 3624(b) was ambiguous. *Id.* at 1269-70. Proceeding to the second *Chevron* step, we then asked whether the BOP's interpretation was "reasonable." *Id.* at 1270. Answering in the affirmative, we concluded that the BOP's interpretation "comports with the statutory language of section 3624(b), and does not subvert the statutory design." *Id.*

Nearly four years later we revisited the same issue in *Mujahid*, 413 F.3d at 998. Citing *Pacheco-Camacho*, we reaffirmed the reasonableness of the BOP's interpretation of § 3624(b). *Id.* at 999 ("Mujahid's position rests on an interpretation of this statute at odds with binding authority of this court").

Notwithstanding our decisions in *Pacheco-Camacho* and *Mujahid*, Tablada filed this habeas petition, but under a different theory. Unlike the previous challenges to the reasonableness of the BOP's construction of § 3624(b), Tablada instead contends that the BOP has not complied with the requirements of the APA, 5 U.S.C. § 706, because it has not articu-

---

[4]Under *Chevron,* the Court must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear," then the Court "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A.*, *Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984). Next, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (citations omitted).

lated a rational basis for its decision to promulgate its interpretation of the statute. The United States District Court for the District of Oregon found that *Pacheco-Camacho* and *Mujahid* prevented it from considering Tablada's APA challenge, since the Ninth Circuit had already determined that the BOP's method for calculating good time credit was reasonable. This timely appeal followed.

After the parties submitted briefing on the instant case, we addressed the very procedural issue raised by Tablada in *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008). In *Arrington*, the petitioners brought petitions for habeas corpus which challenged 28 C.F.R. § 550.58(a)(1)(vi)(B), a BOP regulation which categorically excluded prisoners with convictions involving a firearm or other dangerous weapon or explosives from eligibility for early release under 18 U.S.C. § 3621(e). *Id.* at 1109. Reversing the district court's denial of the petitions, the Ninth Circuit held that the rule violated the APA, 5 U.S.C. § 706, because the administrative record contained no rationale explaining the BOP's decision for the categorical exclusion. *Id.* at 1114. The district court had identified two possible rational bases for the BOP decision: "(1) the increased risk that offenders with convictions involving firearms might pose to the public and (2) the need for uniformity in the application of the eligibility regulation." *Id.* at 1113 (citations omitted). The Ninth Circuit found the first rationale, articulated only in the BOP's brief and not contained in the administrative record, was "precisely the type of '*post hoc* rationalization [ ]' of appellate counsel that we are forbidden to consider in conducting review under the APA." *Id.* (emphasis and alteration in original) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). As for the second rationale, the Ninth Circuit found it inadequate because the BOP offered no explanation for why it chose categorical *exclusion* of prisoners with convictions involving firearms to achieve uniformity, rather than categorical *inclusion* of prisoners with nonviolent convictions involving fire-

arms, which would achieve the stated goal of uniformity. *Id.* at 1114.

The BOP now concedes that the regulation governing good time conduct credits suffers the same procedural infirmity as the regulation in *Arrington*, because the BOP failed to articulate in the administrative record the rationale upon which it relied when it promulgated the good time credit regulation.

## II.  STANDARD OF REVIEW

We review a district court's denial of a writ of habeas corpus pursuant to 28 U.S.C. § 2241 *de novo*. *Id.* at 1112.

In reviewing the BOP's conduct, we consider whether the agency's promulgation of the final rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We conduct this review based solely on the administrative record and determine whether the agency has articulated a rational basis for its decision. *Arrington*, 516 F.3d at 1112 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 50 (1983)).

## III.  DISCUSSION

**[1]** In light of the BOP's concession that it failed to articulate in the administrative record a rationale for the interpretation of § 3624(b)(1) promulgated in § 523.20, the only remaining issue, then, is to determine the appropriate remedy. The BOP contends that any relief in this case should be limited to a procedural correction, allowing the BOP's long-standing practice governing good conduct sentencing credits to continue until the procedural correction is effected. Tablada asks us to grant his habeas petition and order the BOP to calculate his good conduct time based on his interpretation of the good time credit statute.

A.   *Deference to the BOP Interpretation of § 3624(b)*

**[2]** Since its promulgation of Program Statement 5880.28 in 1992, the BOP has interpreted § 3624(b) to refer to time served, rather than sentence imposed. Thus, even if we take the invalid regulation out of the equation, we are left with an interpretation of § 3624(b) that bases good time credit on *time served* rather than *sentence imposed*.

An agency's rules are entitled to two possible levels of deference. Generally, *Chevron* deference is reserved for legislative rules that an agency issues within the ambit of the authority entrusted to it by Congress. *See United States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001). Such rules are characteristically promulgated only after notice and comment. *Id.* at 230. If, on the other hand, the agency rule or decision is not within an area of express delegation of authority or does not purport to have the force of law, it is entitled to a measure of deference proportional to its power to persuade, in accordance with the principles set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Mead*, 533 U.S. at 228, 234. Under this level of review, we look to the process the agency used to arrive at its decision. *Id.*; *Skidmore*, 323 U.S. at 140. Among the factors we consider are the "interpretation's thoroughness, rational validity, [ ] consistency with prior and subsequent pronouncements," the " 'logic[ ] and expertness' of an agency decision, the care used in reaching the decision, as well as the formality of the process used." *The Wilderness Society v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1068 (9th Cir. 2003) (citing *Skidmore,* 323 U.S. at 140 and *Mead*, 533 U.S. at 228).

Program Statement 5880.28 does not purport to carry the force of law and was not adopted after notice and comment. We therefore do not accord it *Chevron* deference. However, because Program Statement 5880.28 is an internal agency guideline, "akin to an 'interpretive rule' that 'do[es] not require notice and comment,' " *Reno v. Koray*, 515 U.S. 50,

61 (1995) (quoting *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995)), we believe it is entitled to a measure of deference under *Skidmore*. We conclude that the Program Statement 5880.28 does meet the *Skidmore* standard, and thus provides the appropriate interpretation of § 3624. We turn now to the reasons underlying this conclusion.

B.   *Application of Deference under Skidmore*

Applying the factors articulated in *Skidmore*, we find that the methodology utilized in Program Statement 5880.28 is both persuasive and reasonable. Under *Skidmore*, one of the factors we consider is the "rational validity" of the agency decision. *See The Wilderness Society*, 353 F.3d at 1068. In *Pacheco-Camacho* and *Mujahid,* we already determined that the BOP's interpretation of § 3624(b) via its regulation, § 523.20, is "reasonable." *See Mujahid*, 413 F.3d at 998; *Pacheco-Camacho*, 272 F.3d at 1270-1271. Because Program Statement 5880.28 provides an interpretation of the federal statute identical to that in § 523.20, our conclusion in *Pacheco-Camacho* regarding the reasonableness of § 523.20 applies to it with equal force.

**[3]** In *Pacheco-Camacho*, we found that the BOP's methodology for calculating good time conduct credits was reasonable because it "comports with the statutory language of section 3624(b) . . . ." *Pacheco-Camacho*, 272 F.3d at 1270. In particular, we examined the statutory language of § 3624(b) and focused on its final sentence, which reads, "credit for the last year or portion of a year of the term of imprisonment shall be *prorated* and credited within the last six weeks of the sentence." *Id.* at 1268-69 (emphasis in original) (quoting 18 U.S.C. § 3624(b)(1)). Under the BOP's reading of the statute, "the model prisoner will ordinarily receive his fifty-four-day credit *after* complying with prison disciplinary rules for 365 days . . . ." *Id.* (emphasis in original). During the last year or portion of a year of the prisoner's sentence, the BOP would prorate the 54 days of credit a year to 0.148

day of credit for every actual day served during good behavior
(54/365 = 0.148). *Id.* at 1267-68. Like Tablada, the plaintiff
in *Pacheco-Camacho* read the statute as awarding good time
credit based on the sentence imposed, so a prisoner with a ten-
year sentence would receive 54-days per year multiplied by
ten years, or 540 days. We found the plaintiff's reading incon-
sistent with a statute that contemplates prorating credit for the
last year of imprisonment. *See id.* at 1269. We pointed out
that under the plaintiff's interpretation (or in this case Tabla-
da's), the model prisoner would receive a 54-day credit after
serving only 311 days (365 days - 54 days), thus conferring
a "windfall" on prisoners. *Id.* We noted that "[n]othing in the
statute clearly suggests that Congress intended to give the
prisoner such a windfall in his last year." *Id.* Likewise in
*Mujahid*, we reaffirmed the BOP's interpretation of § 3624(b)
as reasonable and subject to deference. *See Mujahid*, 413 F.3d
at 997.

**[4]** In addition to the statutory language, we also discussed
in *Pacheco-Camacho* the legislative history of § 3624, and
determined that the BOP's methodology for calculating good
time conduct credits "does not subvert the statutory design."
*Pacheco-Camacho*, 272 F.3d at 1270. By enacting § 3624,
Congress sought to simplify the computation of good time
credits which, under its predecessor statute, computed good
time credits after every month served. *Id.* at 1269. Thus,
unlike the earlier scheme which called for calculating good
time credits at different monthly rates depending on the length
of the prison term and which allowed prison officials discre-
tion to withhold and restore credits depending on the inmate's
subsequent behavior, the new system embodied in § 3624
envisioned that a prisoner could calculate with certainty the
time of his release. *Id.* Acknowledging the complexity of the
BOP's computation method, we explained that "Congress
chose to tolerate the additional complexity in order to arrive
at a more equitable result," namely "an effective and fair pro-
rating scheme, enabling inmates to calculate with reasonable
certainty the end of their imprisonment . . . ." *Id.* at 1270. In

sum, based on our reasoning in *Pacheco-Camacho* and *Mujahid*, we find that the methodology utilized in Program Statement 5880.28 has "rational validity."

**[5]** Another factor we consider under *Skidmore* is whether the agency has applied its position consistently. *Mead*, 533 U.S. at 228; *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993). Here, BOP Program Statement 5880.28 has been in effect for at least sixteen years, since its implementation in 1992. *See Bowen v. Hood*, 202 F.3d 1211, 1221-1222 (9th Cir. 2000) (treating unambiguous language in a program statement as binding upon the BOP). Moreover, Program Statement 5880.28 incorporated the same sentencing credit methodology the BOP had been practicing since 1987. Tablada has not identified any instances where the BOP used any other methodology for calculating good time credits, including the methodology he proposes. We may thus assume that for more than twenty years, the BOP has consistently implemented its policy of calculating good time credits based on time served rather than sentence imposed.

**[6]** While Tablada and others may have asserted a reasonable alternative interpretation, *i.e.,* calculating good time credits based on sentence imposed rather than time served, the consistent and even application of the BOP's methodology promulgated in Program Statement 5880.28 since 1992 convinces us that we must accord deference to the BOP's interpretation. To change course now would have an extremely disruptive effect on the BOP's administration of the release of federal prisoners. Given this consideration, as well as the reasonableness of the BOP's interpretation of § 3624(b)(1) discussed in *Pacheco-Camacho*, we conclude that the BOP's methodology for calculating good time credits in Program Statement 5880.28 is reasonable and persuasive.

Finally, we address Tablada's argument that the United States Sentencing Commission ("Commission") has provided the appropriate standard by which to interpret § 3624. Tablada

insists that the Commission has interpreted the good time credit statute to mean a prisoner earns credit on each year of the sentence imposed. He contends that the fact that the Commission interprets § 3624 in this manner means that the "proper remedy" for the BOP's APA violation is to implement Tablada's interpretation, rather than the time served rule unless and until the BOP adopts a regulation complying with the APA that passes judicial muster.

Congress charged the Commission with establishing sentencing ranges for offenses, 28 U.S.C. § 994(b), and instructed it, "as a starting point in its development of the initial sets of guidelines," to ascertain the average sentences imposed and length of terms served prior to creation of the Commission. 28 U.S.C. § 994(m).[5] The Commission then engaged in a statistical analysis of data from thousands of sentences, and presented the results in the "Levels Table" in June 1987. *See* United States Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements, at 27-39. Table 1(a), "Estimated Time Served for Baseline Offenses: 1st Time Offenders, Convicted at Trial, Sentenced to Prison, Adjusted for Good Time" presents a statistical analysis of average sentences. *See id.*

In the Supplementary Report, the Commission provided a definition of the term "adjusted for good time":

---

[5]28 U.S.C. § 994(m) states: "The Commission shall insure that the guidelines reflect the fact that, in many cases, current sentences do not accurately reflect the seriousness of the offense. This will require that, as a starting point in its development of the initial sets of guidelines for particular categories of cases, the Commission ascertain the average sentences imposed in such categories of cases prior to the creation of the Commission, and in cases involving sentences to terms of imprisonment, the length of such terms actually served. The Commission shall not be bound by such average sentences, and shall independently develop a sentencing range that is consistent with the purposes of sentencing described in section 3553(a)(2) of title 18, United States Code."

> *Adjusted for good time.*" Prison time was increased by dividing by 0.85 good time when the term exceeded 12 months. This adjustment corrected for the good time (resulting in early release) that would be earned under the guidelines. This adjustment made sentences in the Levels Table comparable with those in the guidelines (which refer to sentences prior to the awarding of good time).

*Id.* at 23.

Tablada asserts that every federal prisoner has a term of imprisonment imposed based on a Sentencing Table that assumes good time credit based on 15% of the sentence imposed.[6] He claims that because the Commission was acting in its authority to interpret the Sentencing Reform Act—including § 3624(b) covering good time credit—the Commission's (and Tablada's interpretation) should prevail.

We are not persuaded by Tablada's argument. First, if the Commission felt the BOP was erroneously interpreting § 3624(b), it had ample opportunity to make its objections known during the notice and comment periods for 28 C.F.R. § 523.20, in September 1997 and June 2003. The Commission, however, remained silent. Second and more importantly, we have already found that the BOP is the agency charged with interpreting the good time credit statute. *See Pacheco-Camacho*, 272 F.3d at 1270 ("While the statute does not explicitly vest the BOP with the authority to determine the basis for the proration of good time credits, this power is implied by the BOP's statutory authority [under 18 U.S.C. § 3624] to award good time credits to inmates serving federal sentences"). For these reasons, Tablada's argument cannot stand.

---

[6]Tablada's interpretation of the statute results in a prisoner being eligible for a 15% reduction in his sentence, whereas the BOP's interpretation results in an approximately 13% reduction.

## IV.  CONCLUSION

The BOP has admitted it violated § 706(2)(A) of the APA in failing to set forth a valid rationale for its interpretation of the federal good time credit statute when it promulgated 28 C.F.R. § 523.20. Nevertheless, invalidating § 523.20 leaves in place the same interpretation of § 3624(b) contained in BOP Program Statement 5880.28. We conclude that the BOP's methodology for calculating good time credits in Program Statement 5880.28 is both reasonable and persuasive under *Skidmore*. We therefore affirm the district court's denial of Tablada's petition for habeas corpus.

**AFFIRMED**