Gerald **GREEN**, Petitioner,

v.

Joseph **WOODRING** (Warden), Respondent.

No. CV 05–6058–AG (CW).

United States District Court, C.D. California.

Jan. 28, 2010.

Gerald Green, Rodeo, CA, pro se.

Christopher K. Lui, AUSA-U.S. Attorney Offices, Los Angeles, CA, for Respondent.

ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ANDREW J. GUILFORD, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court has reviewed the entire record in this action, as well as the Report and Recommendation of the United States Magistrate Judge. No objections to the Report and Recommendation have been received.

**IT IS ORDERED:** (1) that the Report and Recommendation of the United States Magistrate Judge be accepted; (2) that the petition for habeas corpus relief be **GRANTED** in the form of a declaratory judgment finding that Petitioner's federal sentence began running, as a matter of law, on August 2, 2000, as discussed in the Report and Recommendation; and (3) that judgment be entered accordingly.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on the parties.

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE
JUDGE

CARLA M. WOEHRLE, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Andrew J. Guilford, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California. It is recommended that the *pro se* petitioner be granted relief as discussed below.

*THE PRESENT PROCEEDINGS*

This petition for writ of habeas corpus (28 U.S.C. § 2241) was originally filed in the United States District Court for the Northern District of California on July 28, 2005. By order of that court, the petition was transferred to this district, where it was filed on August 18, 2005.

At the time of filing, Petitioner was a prisoner in the custody of the United States Bureau of Prisons ("BOP") at FCI

Terminal Island, in this judicial district. Petitioner was in custody pursuant to a criminal conviction and sentence in the United States District Court for the Northern District of California.[1] The petition addresses alleged errors in the calculation of Petitioner's sentence by the BOP. Because Petitioner challenges the execution of his sentence, and was, at the time of filing, in custody in this district, this action was properly brought here as a petition under 28 U.S.C. § 2241.

The petition ("Pet.") includes three attachments ("Pet. Att."). On December 22, 2005, Respondent filed an answer ("Ans.") along with a (first) declaration by Eliezer Ben–Shmuel ("Decl. 1") and attached exhibits ("Ans. Ex."). [See docket no. 12.] Petitioner filed a response ("Res.") on January 31, 2006. [Docket no. 14.]

In an order re: further proceedings ("OFP") filed October 21, 2008, the court sought further information in order to determine when Petitioner's federal sentence began. [Docket no. 24.] In response, Respondent filed a supplemental brief ("S. Brf.") along with a second declaration by Eliezer Ben–Shmuel ("Decl. 2") and an attached exhibit ("S. Brf. Ex."). [Docket no. 27.]

### BACKGROUND AND CHRONOLOGY

Petitioner was arrested on September 2, 1999, while he was on parole on a prior California state conviction. [Pet. at 2; Decl. 1, ¶¶ 5–6; Ans. Exs. 1, 2.] It is undisputed that the September 2, 1999 "offense" was the basis for both the subsequent revocation of Petitioner's state parole and his subsequent federal criminal prosecution. [Pet.; Ans.]

On September 12, 1999, California parole authorities, on screening, revoked Petitioner's parole and ordered him returned to custody until October 2, 2000. [Decl. 1, ¶¶ 5–6; Ans. Exs. 1, 2.] A formal parole revocation hearing was held on November 30, 1999, and the decision to revoke Petitioner's parole and return him to custody until October 2, 2000, was reaffirmed. [Decl. 1, ¶ 6; Ans. Ex. 2.]

Meanwhile, a federal criminal complaint was filed against Petitioner on October 14, 1999, in the United States District Court for the Northern District of California. [See Docket, Case No. CR 99–40245.] On December 13, 1999, the United States Marshal's Service ("USMS") took Petitioner into custody on a writ of habeas corpus ad prosequendum issued by the district court.[2] [Decl. 1, ¶ 7–8; Ans. Exs. 3, 4; Docket No. CR 99–40251.] On February 28, 2000, Petitioner pled guilty, pursuant to plea agreement, and was convicted on the federal charges. [Docket No. CR 99–40251.] On March 1, 2000, the district court ordered that Petitioner be moved to FCI Dublin when space became available, and, beginning on May 12, 2000, Petitioner was housed at FCI Dublin as a pre-sentencing detainee.[3] [Docket No. CR 99–40251; S. Brf. Ex., p. 2.]

On July 10, 2000, the district court pronounced sentence. [Docket No. CR 99–40251; Judgment, Ans., Ex. 5.] The dis-

---

1. As discussed below, Petitioner has since been released from BOP custody, but is still subject to a term of supervised release.

2. It is evident that Petitioner was continually in custody (state or federal) from his arrest on September 2, 1999, through the execution of the writ ad prosequendum on December 13, 1999. It is not exactly clear when, during this time, he was in state custody and when

he was in federal custody, but that does not need to be determined in order to decide the issues raised in the present petition.

3. It is evident that Petitioner was in USMS custody, pursuant to the writ ad prosequendum, from December 13, 1999, through May 12, 2000, but it is not clear where he was held. However, this also does not need to be determined at this time.

trict court imposed a term of 108 months imprisonment and thirty-six months supervised release. [*Id.*] Petitioner was ordered "committed" to BOP custody to serve his prison term, and he was ordered "remanded" to USMS custody. [Judgment, Ans., Ex. 5.]

It is not clear exactly what happened next, and this court ordered additional briefing in order to clarify Petitioner's custody status during the period between July 10, 2000 (when he was sentenced) and August 15, 2000 (when he arrived at FCI Terminal Island). [*See* OFP filed October 21, 2008.] The district court judgment was filed on July 19, 2000. [Docket No. CR 99–40251.] BOP records indicate that, on August 2, 2000, Petitioner, who had been in presentence custody at FCI Dublin, was "administratively released," admitted to an in-transit facility, released from the in-transit facility, and temporarily housed as a "holdover" at FCI Dublin. [S. Brf. Ex., p. 2.] On August 15, 2000, the "holdover" was removed, Petitioner was admitted to an in-transit facility, released from the in-transit facility, and designated at his assigned facility at FCI Terminal Island. [*Id.*]

At this point there may have been some confusion as to whether Petitioner was to be first returned to state prison or directly sent to federal prison. [*See* Ans. Ex. 3.] However, it is now evident and undisputed that Petitioner was not actually returned to the physical custody of the state of California at that time, but remained physically in federal custody during the entire period between his sentencing on July 10, 2000, and August 15, 2000, when he was housed at FCI Terminal Island. [S. Brf. Ex., p. 2; Decl. 2, ¶¶ 5–6.]

Although Petitioner remained physically in federal custody during this period, it is also clear that California authorities continued to give him credit against his parole revocation term, regardless of his physical location or custody status, until that term expired and he was discharged from state jurisdiction on October 2, 2000. [Ans. Exs. 1, 2, 4.]

Petitioner's evidence suggests that the BOP initially computed his federal sentence as beginning on July 10, 2000 (when the district court imposed sentence), and gave him jail credit from September 2, 1999 (the date of arrest on the current offense) through November 8, 1999 (the date he was released on bond by federal authorities), and from December 13, 1999 (when the writ ad prosequendum was issued) through July 9, 2000 (the day before the federal court imposed sentence). [Pet. Att. A.] However, at least as early as January 15, 2004, the BOP applied a new computation making two changes, namely: (1) computing Petitioner's federal sentence as beginning on October 2, 2000 (when his state parole revocation term expired), and (2) deleting the "jail credit" for the period from December 13, 1999 through July 9, 2000 as having been "erroneously awarded." [Pet. Atts. B, C.] It appears to be undisputed that Petitioner was entitled to, and received, "jail credit" (*i.e.*, prior custody credit) for the period from September 2, 1999 through November 8, 1999. On this computation, Petitioner's "EXPIRATION FULL TERM DATE" was July 25, 2009. [Pet. Att. C.]

In fact, Petitioner was transferred from FCI Terminal Island to a residential re-entry center on September 3, 2007, and was transferred to home confinement on January 28, 2008. [Decl. 2, ¶ 5; S. Brf. Ex., p. 2.] Because of good conduct time earned, Petitioner completed his sentence of imprisonment and was released from BOP custody on May 28, 2008. [*Id.*]

By law, Petitioner's three year term of supervised release began on that date. *See* 18 U.S.C. § 3624(e) ("term of super-

vised release commences on the day the person is released from imprisonment").

### PETITIONER'S CLAIMS

Petitioner alleges that he was continuously in federal custody beginning on December 13, 1999, when the writ ad prosequendum was issued. [Pet. at 2.] He further alleges that state parole authorities understood his state parole revocation sentence as continuing to run, concurrently, while he was in federal custody, from December 13, 1999, until the state sentence expired on October 2, 2000. [Pet. at 2–3.] He contends that the BOP erred in canceling credit against his federal sentence for the period from December 13, 1999 through October 2, 2000. [Pet. at 4–5.] He seeks an order directing the BOP to properly recalculate his custody credit and his sentence as served. [Pet. at 6.] Finally, Petitioner contends that he has fully exhausted administrative remedies on these claims, and Respondent has not disputed that contention.[4]

In the Answer, Respondent contends (1) that Petitioner was under state jurisdiction and "on loan" to the federal court while the writ ad prosequendum was in effect; (2) that Petitioner's federal sentence was, by law, consecutive to his state sentence, and could only begin once the state sentence had expired; and (3) that Petitioner was not entitled to custody credit before the state sentence expired because he was receiving credit on his state sentence during that time.

---

**4.** Petitioner also appears to contend that the district court should have imposed his federal sentence concurrently to his state sentence (or would have done so if it had known of the pending state sentence), and seeks an order modifying the judgment. [Pet. at 6; Res. at 4–5.] However, as noted above, this action was properly brought as a petition under 28

### DISCUSSION

There are four issues that need to be determined in order to decide this petition: the status of Petitioner's custody under the writ ad prosequendum, the merit of his claim to prior custody credit, the date he began serving his federal sentence, and whether his petition is now moot.

### A. PETITIONER'S CUSTODY ON THE WRIT AD PROSEQUENDUM

A federal sentence cannot begin before the date of sentencing, at the earliest. *See* the BOP's Sentence Computation Manual (for "new law" sentences), Program Statement ("PS") 5880.28, p. 1–13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). In Petitioner's case, therefore, his federal sentence could not have begun earlier than July 10, 2000, when the district court pronounced sentence. Although Petitioner was physically in federal custody from December 13, 1999, onward, that custody was pursuant to a writ ad prosequendum, issued so that he could be prosecuted in federal court. *See Thomas v. Brewer,* 923 F.2d 1361, 1367 (9th Cir.1991) ("When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly."); *see also Taylor v. Reno,* 164 F.3d 440, 444 (9th Cir.1998) (state prisoner appearing in federal court under writ ad prosequendum still in state custo-

---

U.S.C. § 2241 in this district insofar as it challenges the BOP's sentence calculations. If, on the other hand, Petitioner seeks to challenge his sentence as originally imposed by the district court, that challenge must be brought in a motion under 28 U.S.C. § 2255 in the district of conviction.

dy); *Nyquist v. Norwood,* 2008 WL 4534271 at *2, Case No. SACV 07–1237–DOC (C.D.Cal., Sep. 30, 2008) (*citing Thomas* ). Thus, Petitioner remained in state custody, legally and primarily, pursuant to the writ ad prosequendum, from December 13, 1999, until his custody status changed. If Petitioner is entitled to credit against his federal sentence during that period, it must be on some legal basis other than being physically in federal custody.

## B. PETITIONER'S CLAIM FOR PRIOR CUSTODY CREDIT

It is undisputed that the BOP gave Petitioner "jail credit" for sixty-eight days (while he was, apparently, in federal custody, from his arrest on September 2, 1999, until his return to state custody on November 8, 1999, for his parole revocation hearing). [S. Brf. Ex., pp. 4–5.] However, Petitioner does not appear to be entitled to any other period of prior custody credit.

■ A federal inmate may receive prior custody credit, on certain conditions, for time in official detention "that has not been credited against another sentence." 18 U.S.C. § 3585(b). Petitioner remained in official custody from November 8, 1999, until he began legally serving his federal sentence (whether on July 10, 2000, October 2, 2000, or on some intermediate date). However, he received credit against his state parole revocation sentence for the entire period of time from November 8, 1999, through October 2, 2000. Therefore, whether Petitioner's federal sentence began running on July 10, 2000 (at the earliest), October 2, 2000 (at the latest), or on some intermediate date, he is not entitled, under 18 U.S.C. § 3585(b), to any further prior custody credit (beyond what the BOP

awarded) for any time in custody before his federal sentence began.

## C. THE COMMENCEMENT OF PETITIONER'S FEDERAL SENTENCE

■ Under 18 U.S.C. § 3584(a), a federal prison sentence is construed as consecutive to a term imposed at another time unless a court orders the terms to run concurrently. In Petitioner's case, the district court did not order his federal sentence to run concurrently to his state parole revocation sentence. [Ans. Ex. 5.] Therefore, the BOP correctly concluded that the federal court did not order Petitioner's federal sentence to be served concurrently with his state sentence.

In the Answer, Respondent further concludes that Petitioner's federal sentence could not begin running until his state sentence was completed, even though, during part of the time the state sentence was still running, Petitioner was in federal prison after being sentenced and ordered committed by a federal district court. In support, Respondent cites *Taylor,* 164 F.3d at 445. However, the circumstances differed in *Taylor,* in which a petitioner, after federal sentencing, was returned to state authorities to serve out his state sentence, and the BOP declined either to take him into custody before he completed his state sentence or to designate a state prison as the place in which he might concurrently serve his federal sentence.[5]

In the present case, pursuant to the writ ad prosequendum the USMS could have returned Petitioner to state authorities after the district court pronounced sentence, and the BOP could have declined to take Petitioner into custody until his state sentence was completed, but that is not what

---

**5.** Respondent also cites *Thomas,* 923 F.2d at 1368–69. However, in *Thomas,* also, a petitioner was sentenced in federal court, then returned to state custody to serve out a state sentence, before being taken into federal custody to serve his federal sentence.

happened. Instead, as is now evident, once the federal court pronounced sentence on July 10, 2000, Petitioner was not returned physically to state custody, but remained in federal custody, in federal institutions, until his transfer to home confinement on January 28, 2008, and his final "good conduct" release on May 28, 2008.

When a federal court has sentenced a person to a term of imprisonment, that person is committed to BOP custody, and it is the BOP's responsibility to designate the place of imprisonment (a federal facility or another facility). *See* 18 U.S.C. § 3621. "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); *see also* PS 5880.28, p. 1–12–13. As noted above, the record shows that the district court pronounced sentence on Petitioner on July 10, 2000, that he was designated to serve that sentence at FCI Terminal Island, and that he was actually received there on August 15, 2000.

In deciding when Petitioner legally began serving his federal sentence, the point at issue is the date on which he was "received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Respondent now concedes that, if this court is correct in its reading of 18 U.S.C. § 3585(a), Petitioner's federal sentence should have commenced on August 15, 2000. [S. Brf. at 3.]

Respondent bases this conclusion on its construction of the evidence as showing that the USMS released Petitioner to designated BOP custody at FCI Terminal Island on that date. [*Id.*, citing Decl. 2, ¶ 6, *cf.* S. Brf. Ex., pp. 2 (date designated: 08–15–2000) and 3 (date committed: 08–15–

2000).] However, the evidence cited seems to indicate that Petitioner was actually "received in custody awaiting transportation" on August 2, 2000. [S. Brf. Ex., p. 2 (administrative release and admitted to in-transit facility: 08–02–2000).]

■ Thus, under 18 U.S.C. § 3585(a) and on the record evidence, it appears that the correct starting date for Petitioner's sentence is August 2, 2000, rather than October 3, 2000, as calculated by the BOP. The magistrate judge recommends that this court find that Petitioner's federal sentence, as a matter of law, began running on August 2, 2000.

## D. THE ISSUE OF MOOTNESS

■ As noted above, Petition is no longer in BOP custody, and he has fully served the sentence of imprisonment on which he was in BOP custody. Therefore, the courts cannot order the BOP either to release Petitioner unconditionally, or to do so unless it recalculates his sentence. Even so, the petition is not moot, because Petitioner is still in federal custody on supervised release. *See Tablada v. Thomas*, 533 F.3d 800, 802 n. 1 (9th Cir.2008) (release from prison did not moot action because sentencing court might exercise discretion to reduce term of supervised release); *Mujahid v. Daniels*, 413 F.3d 991, 994–95 (9th Cir.2005) (same).

The courts cannot order Petitioner's term of supervised release automatically reduced—by construing it as having started on the date he should have been released from prison-because, as noted above, a term of supervised release begins by law when an inmate is actually released from prison. *See* 18 U.S.C. § 3624(e) (supervised release starts on day of release from imprisonment); *see also United States v. Johnson ("Johnson")*, 529 U.S. 53, 56–59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (applying § 3624(e) as meaning that

supervised release begins on actual release even if prisoner should have been released earlier); *Mujahid,* 413 F.3d at 994 (same). On the other hand, a sentencing court, as the "supervisor" over supervised release, can provide relief in such a case by modifying the terms of supervised relief or ordering early termination. *See Johnson,* 529 U.S. at 60, 120 S.Ct. 1114; *Mujahid,* 413 F.3d at 994–95; 18 U.S.C. § 3583(e).

This court itself cannot make such an order; only the sentencing court can do so. However, the possibility that the sentencing court might do so means that the present petition, properly brought in this court, is not moot. *See Mujahid,* 413 F.3d at 995 and n. 3. This court may, therefore, provide Petitioner the only relief within its power at this time; namely, in the form of a declaratory judgment finding that the BOP erred in calculating Petitioner's sentence, which should have begun, by law, on August 2, 2000. Petitioner may then, at the appropriate time, seek relief in the trial court under 18 U.S.C. § 3583(e), in light of the findings of this court. *See Johnson,* 529 U.S. at 60, 120 S.Ct. 1114.

### *RECOMMENDATIONS*

The magistrate judge recommends that the court issue an order: (1) accepting this Report and Recommendation; and (2) granting petitioner's application for relief in the form of a declaratory judgment finding that Petitioner's federal sentence began running, as a matter of law, on August 2, 2000.