**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY CRICKON,
    *Petitioner-Appellant,*

v.

J.E. THOMAS,
    *Respondent-Appellee.*

No. 08-35250

D.C. No.
07-CV-01180-HA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
February 2, 2009—Portland, Oregon

Filed August 25, 2009

Before: Richard A. Paez and Johnnie B. Rawlinson,
Circuit Judges, and Bruce S. Jenkins,* District Judge.

Opinion by Judge Rawlinson

*The Honorable Bruce S. Jenkins, Senior United States District Judge for the District of Utah, sitting by designation.

11727

**COUNSEL**

Stephan R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, on behalf of petitioner-appellant Jerry Crickon.

Suzanne A. Bratis, Assistant United States Attorney, Portland, Oregon, on behalf of respondent-appellee J.E. Thomas.

---

**OPINION**

RAWLINSON, Circuit Judge:

Appellant Jerry Crickon (Crickon) challenges regulations promulgated by the Bureau of Prisons (BOP) that categorically exclude prisoners with certain prior convictions from early release eligibility. Because we conclude that the BOP failed to provide a rational explanation for the exclusion in the administrative record, we reverse the district court's decision denying Crickon's habeas petition.

## I.　BACKGROUND

### A.　Regulatory Background

Title 18 U.S.C. § 3621 governs the terms of imprisonment for a person convicted of a federal crime. *See* 18 U.S.C. § 3621. In 1990, Congress enacted the Crime Control Act of 1990, which amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Pub. L. 101-647, § 2903, 104 Stat. 4789, 4913 (1990) (codified at 18 U.S.C. § 3621(b)).

In 1994, hoping to "draw into treatment" inmates otherwise reluctant to go through the "difficult and painful treatment

program," H. R. Rep. No. 103-320, p.5 (Nov. 3, 1993), Congress amended 18 U.S.C. § 3621 to include incentives for participation. *See* Violent Crime Control and Law Enforcement Act of 1994, 103 Pub. L. No. 322, § 32001, 108 Stat. 1796, 1896-97. The revised statute thus provides that the BOP may reduce the sentence by up to one year for an inmate who successfully completes the program. 18 U.S.C. § 3621(e)(2)(B).[1]

In 1995, the BOP promulgated its initial interim rule implementing the early release provision of § 3621(e)(2)(B). *See* 60 Fed. Reg. 27692-27695 (May 25, 1995), codified at 28 C.F.R. § 550.58 (1995). The rule reflected the BOP's decision to exercise its discretion to reduce an inmate's sentence by excluding several categories of inmates not referenced in the statute from eligibility for early release, including any inmate with a prior "federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault" irrespective of when such conviction was incurred. 28 C.F.R. § 550.58 (1995).

The BOP subsequently promulgated a second interim rule, leaving unchanged the prior conviction exclusion. *See* 61 Fed. Reg. 25121-01 (May 17, 1996); codified at 28 C.F.R. § 550.58 (1996). Contemporaneously, the BOP issued a Change Notice referencing Program Statement 5330.10, which explained the prior conviction exclusion, emphasizing that *any* prior conviction received at *any time* for one of the four specified crimes would result in categorical exclusion from early release eligibility.[2] *See* Change Notice 01 to

---

[1]The incentive provision at issue reads in its entirety: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B).

[2]Program Statement Number 5330.10 was originally issued in conjunction with the first interim rule released in 1995. *See* Bureau of Prisons Program Statement Number 5330.10 (June 26, 1995), Petr's Br. app. B.

Bureau of Prisons Program Statement Number 5330.10 (May 17, 1996), Petr's Br. app. D.

In 1997, the BOP promulgated a third interim rule. *See* 62 Fed. Reg. 53690 (Oct. 15, 1997); codified at 28 C.F.R. § 550.58 (1997). In this rule, the BOP added inmates with prior convictions for sexual abuse of a minor to those deemed ineligible for early release under § 3621(e). *See* 62 Fed. Reg. at 53691. The BOP provided no explanation for this expansion. *See id.*

In 2000, the BOP promulgated a final rule, at issue in this litigation, codified at 28 C.F.R. § 550.58(a)(1)(iv) (2000).[3] *See* 65 Fed. Reg. 80745-01 (Dec. 22, 2000). In conjunction with this rule, the BOP also responded to comments made in response to the interim rules. *See id.* at 80746-48. The BOP recognized comments expressing concerns regarding the use of prior convictions, *id.* at 80745-46, but finalized the rule without change. *See id.* at 80748.

---

[3]Section 550.58 provides in relevant part:

An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.

(a) Additional early release criteria.

> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

> * * *

> (iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses[.]

28 C.F.R. § 550.58(a)(1)(iv) (2000), current version at 28 C.F.R. § 550.55(b)(4)(i) (2009).

Since promulgation of the original BOP rule, we have affirmed the BOP's authority to exercise its discretion to categorically exclude inmates with a qualifying prior conviction from eligibility for early release under § 3621(e). *See Jacks v. Crabtree*, 114 F.3d 983, 984-86 (9th Cir. 1997); *see also Lopez v. Davis*, 531 U.S. 230, 244 (2001) (recognizing the BOP's discretion under § 3621 to promulgate a regulation categorically denying early release to prisoners based on pre-conviction conduct).

However, as discussed in more detail below, we recently ruled that, with respect to the categorical exclusion of inmates convicted of offenses involving firearms, the BOP's promulgation of § 550.58(a)(1)(vi)(B) (2000) violated the Administrative Procedure Act (APA). *See Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008). Applying § 706 of the APA, we concluded "that the administrative record contains no rationale explaining the Bureau's decision to categorically exclude prisoners with convictions involving firearms from eligibility for early release under § 3621(e)," and that the final rule was therefore invalid with respect to that categorical exclusion. *Id.* at 1112.

## B.    Factual Background

In July, 2000, Crickon was convicted of conspiracy to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. § 846. He was sentenced to 151 months of imprisonment. Crickon is currently incarcerated at the Federal Prison Camp in Sheridan, Oregon (FPC-Sheridan). His expected release date, "via Good Conduct Time Release," is February 9, 2010.

In March, 2007, Crickon received notice that he qualified for participation in the BOP's Residential Drug Abuse Program (RDAP). However, in the same notice, Crickon was informed that he was not eligible for the early release incentive offered in § 3621(e). The sole reason provided for Crick-

on's ineligibility for early release was his conviction in 1970 for voluntary manslaughter, a crime the BOP categorized as a violent offense.

Crickon filed a federal habeas petition in district court under 28 U.S.C. § 2241, challenging the BOP's determination that he was ineligible for the early release incentive. The district court denied the petition, concluding that "[a]lthough petitioner's conviction for voluntary manslaughter occurred almost thirty-eight years ago, the BOP's determination that petitioner is disqualified from the early release incentive . . . because of this conduct was neither arbitrary nor capricious."

Crickon filed a timely notice of appeal and a certificate of appealability was granted as to whether the BOP abused its administrative discretion.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's denial of a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Tablada v. Thomas*, 533 F.3d 800, 805 (9th Cir. 2008). We review the BOP's promulgation of § 550.58 under the APA, *id.*, which provides that an agency action must be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We must review the agency action based solely on the administrative record "and determine whether the agency has articulated a rational basis for its decision." *Tablada,* 533 F.3d at 805 (citation omitted).

## III.    DISCUSSION

### A.    Validity of the BOP Regulation

The APA provides that a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion

or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the arbitrary and capricious standard, our review of the BOP regulation is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Service*, 475 F.3d 1136, 1140 (9th Cir. 2007) (citation and internal quotation marks omitted).

"A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington*, 516 F.3d at 1112 (citation and internal quotation marks omitted). "The reviewing court should not attempt itself to make up for [any] deficiencies." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). Thus, we may "not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (citation omitted). Nor should we "infer an agency's reasoning from mere silence." *Arrington*, 516 F.3d at 1112 (citation omitted). However, "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dept. of Environmental Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (citation and internal quotation marks omitted).

On appeal, Crickon argues that the BOP failed to articulate a reasonable basis for the final rule excluding eligible prisoners with "stale" prior convictions from early release eligibility and that the final rule is therefore invalid under the APA.[4]

---

[4]As a preliminary matter, Crickon's assertion that the district court did not fully address the argument that the BOP rule violates the APA appears to be correct. Although the district court acknowledged the "staleness" argument raised by Crickon, it did not undertake a § 706(2)(A) analysis to determine if the BOP's actions in promulgating the final rule complied with the APA. Because our review is conducted de novo, the lack of analysis does not affect our ability to consider the merits of the case.

Review of the administrative record supports the conclusion that the BOP rule encompassed in 28 C.F.R. § 550.58(a)(1)(iv) (2000) is invalid because the BOP failed to provide any rationale for the categorical exclusion generally, and because the rationale provided for considering any prior conviction, regardless of its age, is premised upon a mistake of law.

Our recent ruling in *Arrington* squarely controls the outcome of the present case. In *Arrington*, eighteen prisoners who had been "convicted of offenses involving the carrying, possession, or use of a firearm or other dangerous weapon or explosives," filed petitions for habeas corpus challenging § 550.58. 516 F.3d at 1111-12. They asserted that the BOP had failed to comply with the APA in promulgating the rule because it provided no rationale for its decision to categorically exclude inmates convicted of nonviolent offenses involving the use of a firearm. *See id.* Relying on the Supreme Court's decision in *Lopez*, 531 U.S. at 230, the district court rejected the petitions, finding two rational bases for the categorical exclusion rule. *See id.* at 1112-13. We reversed, concluding that the first rationale identified by the district court — public safety — was "entirely absent from the administrative record." *See id.* at 1113. We noted that the second rationale — uniformity in application — was set forth by the BOP in the administrative record. *See id.* at 1113-14. However, we determined it was not a rational basis for the rule because the BOP had failed to explain why, in seeking uniformity, it had chosen to categorically *exclude* prisoners with nonviolent convictions involving firearms rather than categorically *include* them. *See id.* at 1114. We ultimately determined that "[t]he agency's lack of explanation for its choice renders its decision arbitrary and capricious." *Id.* (citation omitted). Because we discerned no valid rationale for the categorical exclusion, we held that the final rule was invalid under the APA. *See id.*

In *Arrington*, we acknowledged that both we, in *Bowen v. Hood*, 202 F.3d 1211 (9th Cir. 2000), and the Supreme Court

in *Lopez*, 531 U.S. at 230, articulated possible rationales to support the firearm categorical exclusion. *See id.* at 1115. However, we nevertheless reasoned that neither *Bowen* nor *Lopez* addressed whether the rule was valid under the APA. *See id.* Rather, those cases addressed whether the BOP's exercise of discretion was authorized under 18 U.S.C. § 3621. *See id.* In *Arrington*, we also noted that the rationale identified in *Lopez* was based on arguments made by counsel during the litigation, rather than a rationale offered by the BOP during promulgation of the regulation. *See id.* Therefore, we concluded in *Arrington* that this rationale, absent from the administrative record, did not support the validity of the BOP regulation under the APA. *See id.* at 1115-16.

[1] The administrative record in this case includes several references to the categorical exclusion of inmates with the specified prior convictions. *See, e.g.*, 60 Fed. Reg. at 27692; 65 Fed. Reg. at 80745-46, 80748-49; Program Statement Number 5330.10, Ch. 6, p. 1; Change Notice 01 to Program Statement Number 5330.10, Ch. 6, p. 2. However, as was the case in *Arrington*, absent from the record is any explanation, reasoning or reference to other sources through which the BOP's reasoning might be discerned for the decision to categorically exclude these inmates from early release eligibility.

In the Federal Register notice announcing the first interim rule in which the exclusion was introduced, the BOP's only explanation regarding the categorical exclusion stated:

> In exercising the Bureau's discretion in reducing a sentence, the Bureau shall also review the criminal history of the inmate contained in the Presentence Investigation Report, and any inmate with a federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault shall also be excluded from consideration. Because state convictions may show a considerable range in the degree of violence used in the offense, the Bureau has chosen to use the

above cited categories of crimes, which are reported under the FBI Violent Crime Index, as the sole determinant of violence in the criminal history.

60 Fed. Reg. at 27692.

**[2]** Beyond explaining that it decided upon the four identified categories of convictions because of the variation in violence level that may be found in state convictions, *id.*, the BOP provided no explanation for its decision to look to prior convictions as the appropriate basis to determine categorical exclusions. The BOP offered no rationale for its decision to use the inmate's criminal history as a surrogate for early release ineligibility. The Change Notice issued in conjunction with the release of its second interim rule, *see* Change Notice 01 to Program Statement Number 5330.10, merely emphasized that *any* adult conviction for homicide, forcible rape, robbery, or aggravated assault would result in categorical exclusion.[5] The BOP neither explained why it was necessary to provide this additional emphasis, nor cited to any data or other factors it considered in crafting this comprehensive exclusion. *Id.*

When the BOP enacted the final rule in 2000, codified at

---

[5] The Change Notice stated in relevant part::

*Any* adult conviction for Homicide (including Non-negligent Manslaughter), Forcible Rape, Robbery, or Aggravated Assault is to be considered a crime of violence as it relates to previous criminal history; drug abuse treatment program coordinators must review available documents containing criminal history to ensure the inmate does not have any prior adult convictions for these crimes.

For purposes of this Program Statement, "previous adult convictions" includes criminal convictions that occur at *any time*, prior to the inmate's 3621(e) release date.

Change Notice 01 to Program Statement Number 5330.10, Ch. 6, p. 2 (emphasis in the original).

28 C.F.R. § 550.58 (2000),[6] it addressed comments received in response to the three preceding interim rules. *See* 65 Fed. Reg. at 80746-48.

Relevant comments to the third interim rule again questioned the use of prior convictions. One comment argued "that the regulations unduly restricted eligibility for a remedial program by . . . excluding prisoners with previous convictions for violent crimes . . ." 65 Fed. Reg. at 80748. Another comment urged that "the early release incentive . . . be made available to the broadest population," "that some prior convictions (for example, foreign convictions) were unreliable," and that prior convictions are "not necessarily predictive." *Id.*

In addressing the comment that the regulation unduly restricted eligibility for the remedial program, the BOP responded that the regulation did not have such an effect because the "drug abuse treatment program is open to all inmates with a documented need and interest in the program." *Id.* The BOP continued that "[t]he restrictions in question pertain to the conveyance of a separate incentive at our discretion." *Id.* As noted previously, however, the BOP provided no insight into its rationale for excluding the specified categories of inmates from early release eligibility. Nor did it respond to the comment that prior convictions were not necessarily predictive of an inmate's propensity to engage in further vio-

---

[6] Similar to the notice announcing the first interim rule, the Federal Register notice announcing the final rule stated:

> In exercising the Bureau's discretion to reduce a sentence, we also review the inmate's criminal history in the Presentence Investigation Report. We preclude early release for any inmate with an adult prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault. We selected the above categories of crimes, which are reported under the FBI Violent Crime Index, due to the extensive variations in statutes between states.

65 Fed. Reg. at 80745.

lence, and were sometimes unreliable. *See id.* In denying that the categorical exclusion had the effect of unduly restricting eligibility for the early release incentive, *id.*, the BOP failed to reconcile the exclusion's effect with Congress's stated goal of increasing participation in the "rigorous" treatment programs by codifying the early release incentive. *See* H.R. Rep. 103-320, p. 5.

**[3]** Despite issuing three interim rules and receiving comments relating to the use of prior convictions in response to at least two of these three rules, the BOP never identified, explained, or analyzed the factors it considered in crafting the categorical exclusion. The Supreme Court has "frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 48 (citations omitted). As we noted in *Arrington*, "[a]lthough agencies enjoy wide discretion in fashioning regulations governing the statutes that they are charged with administering, section 706 of the APA requires that they articulate a rationale when they exercise that discretion." 516 F.3d at 1114. This is precisely what the BOP failed to do.

**[4]** Aside from stating that it was promulgating § 550.58(a)(1)(iv) as an exercise of its "discretion to reduce a sentence," 65 Fed. Reg. at 80745, the BOP gave no indication of the basis for its decision. It did not reference pertinent research studies, or case reviews. It did not describe the process employed to craft the exclusion. It did not articulate any precursor findings upon which it relied. It did not reveal the analysis used to reach the conclusion that the categorical exclusion was appropriate. Indeed, the administrative record is devoid of any substantive discussion of the rationale underlying the BOP's exercise of its discretion. As the Supreme Court held in *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167 (1962), where "[t]here are no findings and no analysis . . . to justify the choice made, no indication of the basis on which the [agency] exercised its expert discretion[,]"

the APA " will not permit" us to accept the BOP's decision. *(citation omitted).*

Additionally, although the BOP provided a limited explanation for its decision to include all prior convictions without temporal restriction, *see* 65 Fed. Reg. at 80746, the reasoning articulated by the BOP is cursory and non-responsive to the comments. In addressing a suggestion that only convictions within fifteen years should be considered, the BOP stated:

> Information regarding prior convictions is in the Pre-sentence Investigation Report (PSI). The PSI is a court document and is subject to review by the defendant and defense counsel. In general, information in the PSI about prior convictions may be limited to the fifteen year period covered in the Sentencing Commission Criminal History Category.

> If, however, the PSI contains information on prior convictions beyond the period covered in the Criminal History Category, we believe that we are acting in accordance with Congressional intent when we use the listed prior conviction as a disqualifying criterion.

*Id.*

As Crickon noted, this explanation appears to be premised on an effort to track the requirements imposed by the United States Sentencing Commission when reporting a defendant's criminal history for the purpose of sentencing. *See* U.S.S.G. Ch. 4. However, the requirements for reporting of a defendant's criminal history in a presentence report do not limit the broad discretion afforded the BOP in setting eligibility standards for the incentive program. *See* Fed. R. Crim. P. 32(d)(2) ("The presentence report *must* . . . contain . . . the defendant's history and characteristics, including . . . *any* prior criminal record.") (emphasis added); *see also United States v. Miller*,

588 F.2d 1256, 1265 (9th Cir. 1978), *as amended* (recognizing that any prior criminal history, regardless of its relation to the current criminal conviction, must be included in the presentence report under Rule 32).

[5] More importantly, the BOP's expressed belief that it was "acting in accordance with Congressional intent" is difficult to square with Congress's expressed intent to provide an incentive to encourage maximum participation in the BOP's substance abuse treatment programs. *See* H.R. Rep. 103-320, p. 5. It is easy to understand why a defendant's complete criminal history record should be considered under the advisory Sentencing Guidelines, and when the sentencing judge determines the ultimate sentence under 18 U.S.C. § 3553(a). Without a complete compilation of the defendant's criminal history, the sentencing judge would be unable to fully consider the factors delineated in 18 U.S.C. § 3553(a),[7] as

---

[7]Section 3553(a) delineates the following factors to be considered:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —

required prior to imposing a sentence. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (explaining that the "§ 3553(a) factors are to be taken into account"). It is more difficult to comprehend the rationale for including older convictions in a regulatory scheme crafted as part of an incentive to encourage participation in a prison-sponsored drug rehabilitation program. The difficulty increases when the apparent inconsistency with Congress's expressed intent is considered. Absent articulation of a rational connection between the factors the BOP examined and the conclusions it reached, 28 C.F.R. § 550.58(a)(1)(iv) must be invalidated.[8] *See Northwest Coalition for Alternatives to Pesticides (NCAP) v. EPA*, 544 F.3d 1043, 1052 n.7 (9th Cir. 2008) ("[W]here the agency's reasoning is irrational, unclear, or not supported by the data it purports to interpret, we must disapprove the agency's action.").

---

    (i) issued by the Sentencing Commission . . . ; and

    (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement—

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code . . . ; and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

[8]In his briefs and during oral argument, Crickon noted the extensive studies undertaken by the Sentencing Commission in determining the appropriate temporal limits to be placed on the use of prior criminal convictions for sentencing calculation purposes. These studies reflect the wealth of data available to the BOP when it crafted the categorical exclusion relating to prior convictions. Whether the BOP considered these, or similar studies, cannot be ascertained from the administrative record.

**[6]** On appeal, the BOP argues that the agency's path in creating the categorical exclusion may be discerned — and the final rule upheld — because the rule implements Congress's intention to make the early release incentive only available to non-violent offenders. However, as government counsel acknowledged during oral argument, the BOP's contention that § 3621(e)(2)(B) reveals Congress's intention to limit the incentive to prisoners who have no past convictions for violent crimes is not reflected in the statute's plain language. Section 3621(e)(2)(B) distinguishes only between inmates currently serving sentences for violent versus nonviolent offenses; it does not address inmates' prior convictions. *See id.* (providing that the BOP may reduce "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program."); *see also Jacks*, 114 F.3d at 985 n.2 (noting that the BOP conceded that inmates whose current conviction was for a nonviolent offense, but who had prior convictions for one of the four disqualifying violent offenses, were eligible for early release under the statute). Tellingly, the BOP never articulated this rationale in the administrative record. Thus, the assertion now made on appeal that the BOP's "path" may be discerned from the record because it "mirrors the statute," is "precisely the type of post hoc rationalization of appellate counsel that we are forbidden to consider in conducting review under the APA." *Arrington*, 516 F.3d at 1113 (rejecting rationale recited by the district court that was "entirely absent from the administrative record") (citation, alteration and internal quotation marks omitted).

**[7]** Because the BOP failed to articulate in the administrative record the rationale underlying its decision to adopt a categorical exclusion of inmates with specific prior convictions, we conclude that the BOP's promulgation of the categorical exclusion in § 550.58(a)(1)(iv) did not comply with the APA.[9]

---

[9]The BOP attempts to distinguish *Arrington* by suggesting that, in *Arrington*, the categorical exclusion of inmates convicted of nonviolent

*See Arrington*, 516 F.3d at 1114 (requiring articulation of agency rationale).

## B.   Relief Available to Crickon[10]

offenses involving the use of firearms "was facially inconsistent with the statutory text." The BOP argues that the facial inconsistency with the statutory text and the lack of an adequate explanation resulted in our conclusion that the BOP's rationale could not be discerned. However, the ruling in *Arrington* was not premised on the fact that the rule was facially at odds with the statute. Indeed, we recognized that "either choice [to exclude or include these inmates from early release eligibility] in all likelihood would have withstood judicial scrutiny . . ." *Arrington*, 516 F.3d at 1114. Rather, because the BOP "offered no explanation for why it exercised its discretion to select one rather than the other" we determined that the BOP's decision was arbitrary and capricious. *Id.*

Similarly, we have already determined that under the statute, the BOP's choice to exclude inmates with the specified prior convictions is a proper exercise of its discretion under the statute. *See Jacks*, 114 F.3d at 986. However, under the APA, the BOP had a duty to provide some rationale for its choice, beyond merely stating that it was exercising its discretion. *See Arrington*, 516 F.3d at 1114 ("Although agencies enjoy wide discretion in fashioning regulations governing the statutes that they are charged with administering, section 706 of the APA requires that they articulate a rationale when they exercise that discretion. This is not an empty requirement.").

[10]Crickon raises two additional arguments. First, Crickon argues that the BOP acted arbitrarily and capriciously in promulgating the rule without consideration of the research undertaken by the Sentencing Commission. However, nothing in our precedent dictates which sources the BOP should consider in its rulemaking process. See, e.g., Arrington, 516 F.3d at 1112 (noting only that the agency must have considered the "relevant factors"). In addition, whether or not the BOP considered or ignored the empirical data gathered by the Sentencing Commission is not clear from the record.

Second, Crickon asserts that the BOP acted contrary to law because Congress delegated to the Sentencing Commission the responsibility for determining the weight to give prior convictions. However, the BOP's rule does not intrude upon the Sentencing Commission's authority to determine the weight given to prior convictions for purposes of calculating the sentences. *See Jacks*, 114 F.3d at 986 n.4 (noting that denial of the one-year sentence reduction "merely means that the inmate will have to serve out his sentence as expected"). In any event, we have squarely acknowledged the BOP's authority to exclude inmates with prior violent convictions from eligibility for early release. See id. at 986.

**[8]** The government argues that even if we conclude that the final rule is invalid, the interim rules would also disqualify Crickon from early release. The government's argument is based on our previous holding that "[t]he effect of invalidating an agency rule is to reinstate the rule previously in force." *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) (citation omitted). However, in *Paulsen*, we declined to reinstate the rule previously in force, because that rule "erroneously interpreted" § 3621(e)(2)(B). *Id.* at 1008 (citation omitted). Because the interim rules in this case suffer from the same defect as the final rule — lack of articulation of the agency's rationale — we similarly decline to reinstate them.[11] *See id.*

## IV.   CONCLUSION

**[9]** Although the BOP is afforded wide discretion in promulgating regulations governing the administration of 18 U.S.C. § 3621(e), it must comply with its obligation under the APA to articulate its rationale for exercising such discretion. The administrative record before us is devoid of any contemporaneous rationale for the BOP's promulgation of a rule categorically excluding inmates with certain prior convictions from early release eligibility. The government's arguments on

---

[11]The government's contention that, even if we determine that the interim rules are invalid, we must give deference to the BOP's Program Statements under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), also fails. *Skidmore* deference requires us to consider "the process the agency used to arrive at its decision." *Tablada*, 533 F.3d at 806 (citations omitted). "Among the factors we consider are the interpretation's thoroughness, rational validity, consistency with prior and subsequent pronouncements, the logic and expertness of an agency decision, the care used in reaching the decision, as well as the formality of the process used." *Id.* (citation, internal quotation marks and alterations omitted). Program Statement Number 5330.10 and its subsequent Change Notices suffer from the same infirmities as that of the BOP's promulgation of § 550.58. All documents are equally devoid of the BOP's reasoning for invoking the categorical exclusion for prior convictions. *See* Program Statement Number 5330.10, Ch. 6, pp. 1-2; *see also* Change Notice 01 to Program Statement Number 5330.10, Ch. 6, p. 2.

appeal are impermissible post-hoc rationalizations. We follow the precedent set in *Arrington*, and reverse the district court's denial of Crickon's habeas corpus petition. We remand for the district court to grant Crickon's petition and instruct the BOP to reconsider Crickon's eligibility for early release under § 3621(e)(2)(B) without regard to his prior conviction for voluntary manslaughter.

**REVERSED AND REMANDED.**