BERZON, Circuit Judge,
joined by THOMAS, Chief Judge, and FLETCHER, MURGUIA, and NGUYEN, Circuit Judges, dissenting:
Damous Nettles was denied parole. He argues the parole board’s decision was based at least in part on a disciplinary proceeding in which he was denied due process. Today’s majority opinion responds that if Nettles were successful on his claim, it “would not necessarily lead to his immediate or earlier release from confínement,” because the parole board could deny him parole even without considering the disciplinary proceeding at issue. Pr. Op. at 935.[1] The majority therefore holds that Nettles cannot seek a writ of habeas corpus. This response flouts our normal approach to alleged violations of procedural rights and is inconsistent with the statutes and precedent governing petitions for habeas corpus. I therefore respectfully dissent.
I
When the violation of a procedural right is alleged, the constitutional claim cannot be dismissed just by noting that the proceeding in question might have come out the same way absent the alleged violation. “[T]he right to procedural due process is ‘absolute’ in the sense that it does not depend upon the merits of a claimant’s substantive assertions.... ” Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In other words, the rights Nettles has going into a hearing may be invoked “whatever the ultimate outcome of [the] hearing” may be. Id. (quoting Fuentes v. Shevin, 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)) (internal quotation marks omitted).
This principle exists both to protect individual rights and to maintain the public good stemming from the scrupulous enforcement of impartial procedures. The individual right to a public trial, for instance, has long been “recognized as a safeguard against any attempt to employ our courts as instruments of persecution.” In re Oliver, 333 U.S. 257, 270, 68 S.Ct. 499, 92 L.Ed. 682 (1948). The right to an opportunity to be heard in administrative hearings helps hold government officials accountable for their assertions. See Joint Anti *939 Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 170-71, 71 S.Ct. 624, 95 L.Ed. 817 (1951). These systemic benefits would not accrue if the Constitution’s procedural safeguards were allowed to lapse where we thought it likely they would not affect the outcome of a hearing or trial. See Carey, 435 U.S. at 266, 98 S.Ct. 1042.
The standard announced by today’s majority circumvents this basic facet of procedural justice. The majority opinion holds that habeas petitions are not available unless a claimant’s success “would necessarily demonstrate the invalidity of confinement or its duration.” Pr. Op. at 927 (emphasis added) (internal quotations omitted). Where a claimant alleges a procedural violation, as Nettles does here, the majority uses the fact that the proceeding might have resulted in the same outcome anyway to close the door to ha-beas relief entirely.
This approach, if taken seriously, will foreclose habeas relief on many procedural claims. Petitions for a writ of habeas corpus may be brought by those alleging they are “in custody in violation of the Constitution or laws or treaties of the United States.” 28 U.S.C. § 2241(c)(3); see also 28 U.S.C. § 2254(a). We regularly interpret this language to include prisoners who assert their confinement to be predicated on the violation of a procedural right, even if the proceeding in question might have come out the same way had constitutionally proper procedures been followed. See, e.g., Dixon v. Williams, 750 F.3d 1027, 1032 (9th Cir.2014) (right to due process); United States v. Withers, 638 F.3d 1055, 1063 (9th Cir.2011) (right to a public trial); Holley v. Yarborough, 568 F.3d 1091, 1098 (9th Cir.2009) (right to confront witnesses); Bonin v. Calderon, 59 F.3d 815, 824 (9th Cir.1995) (right to assistance of counsel); Campbell v. Blodgett, 978 F.2d 1502, 1508 (9th Cir.1992) (right to be present during voir dire). The successful invocation of some procedural rights, like the right to effective assistance of counsel, may depend on an affirmative showing that the outcome of the proceeding in question was prejudiced in some way. See, e.g., Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674. (1984). But it will almost always be the case that the proceeding could have resulted in the same outcome even absent the alleged defect.
Just as the prisoners in the cited cases argued that they were in custody in violation of the law due to a trial prejudiced by procedural violations, Nettles argues he is in custody in violation of the law due to a parole hearing prejudiced by procedural violations. We have regularly heard post-conviction claims brought in habeas by prisoners even when the relief sought would not necessarily result in a speedier release.
Earlier this year, for instance, in Rodriguez v. Copenhaver, we granted relief to a federal prisoner under § 2241 even though such relief “would not necessarily lead to his immediate or earlier release from confinement.” Pr. Op. at 935; see Rodriguez v. Copenhaver, 823 F.3d 1238, No. 14-16399, 2016 WL 3003423 (9th Cir. May 25, 2016). In that case, Rodriguez contested the Bureau of Prisons’ (BOP) rejection of his request to get credit applied to his sentence for time served in state custody. Id. at 1241-42, 2016 WL 3003423 at *3. In evaluating Rodriguez’s request, the BOP considered a letter from a judge who had been recused from Rodriguez’s case. Id. at 1241-43, 2016 WL 3003423 at *3-4. We held that by incorporating the letter into its decision, the BOP violated both due process and a federal statute. Id. at 1243, 2016 WL 3003423 at *4.
Importantly, Rodriguez did not indicate that Rodriguez was entitled to have credit applied to his sentence. To the contrary, *940 we noted that the BOP’s decision was an exercise of discretion. Id. at 1241-42, 2016 WL 3003423 at *3; see also 18 U.S.C. § 3621(b). As a result, we simply remanded with directions for the BOP to reconsider Rodriguez’s request anew, without regard to the judge’s letter. Rodriguez, 823 F.3d at 1243, 2016 WL 3003423, at *4.
Rodriguez is not the only habeas petition we have entertained relating to early release where the petitioner’s success “would not necessarily spell immediate or speedier release.” Wilkinson v. Dotson, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005); see, e.g., Close v. Thomas, 653 F.3d 970 (9th Cir.2011); Crickon v. Thomas, 579 F.3d 978 (9th Cir. 2009).
The Supreme Court has also heard at least two such cases, California Department of Corrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), and Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). In Morales, the petitioner, Morales, brought' a habeas action via 28 U.S.C. § 2254 arguing that a statute violated the Constitution’s prohibition on ex post facto laws. 514 U.S. at 504, 115 S.Ct. 1597. The statute in question meant that Morales was eligible for parole suitability hearings every three years rather than each year. Id. at 503, 115 S.Ct. 1597.
Edwards v. Balisok, a case the majority discusses, is another relevant example and hints at the implications of the majority’s standard. Pr. Op. at 928-29. In Balisok, the Supreme Court required the respondent, Balisok, to bring his due process challenge to the prison’s disciplinary pro-eedures under the habeas statute, rather than § 1983. 520 U.S. at 648, 117 S.Ct. 1584. Balisok did not dispute the result of his disciplinary hearing, admitting that the prison likely could revoke his good-time credit in a procedurally proper hearing. Id. at 644-45, 647-48, 117 S.Ct. 1584. However, because Balisok’s procedural challenges “implied] the invalidity of the punishment imposed,” he was required to proceed in habeas, even though the validity of his underlying judgment of conviction was not at stake, and even though success on his claim would not necessarily have resulted in speedier release. Id. at 648, 117 S.Ct. 1584. The majority’s standard apparently would leave similarly situated plaintiffs without a remedy, barring them from seeking relief using the only route the Supreme Court left open.[2]
For Morales, Rodriguez, and Balisok, as well as for many who challenge the adequacy of procedures used at the trial resulting in their conviction, the procedural violation may not have been the cause of their confinement. They might well have been confined absent the violation. But the Supreme Court has never held — or even suggested — that petitioners such as these have not successfully alleged they are “in custody in violation of the Constitution or laws or treaties of the United States,” 28 U.S.C. §§ 2241(c)(3), 2254(a). To the contrary, the cases just discussed suggest that a petitioner meets this statutory language and may seek a writ of habeas corpus if they are (1) in custody, and (2) their custody “could potentially” end or be shortened if an unconstitutional procedure were voided and a new proceeding ordered. See *941 Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) (emphasis omitted).[3]
This understanding of the habeas statutes is also more consonant with the relief that courts typically grant a habeas petitioner. A petitioner’s success on their ha-beas claim often does not meet the majority’s standard of “immediate or speedier release.” Pr. Op. at 934. Frequently, federal courts allow the prisoner to remain confined while the relevant proceeding is redone. See, e.g., Rodriguez, 823 F.3d at 1243, 2016 WL 3003423, at *4. These remedies are consistent with Congress’s directive that courts sitting in habeas “shall ... dispose of the matter as law and justice require.” 28 U.S.C. § 2243. Consonant with this language, the Supreme Court has rejected “the notion.that immediate physical release [is] the only remedy under the federal writ of habeas corpus.” Peyton v. Rowe, 391 U.S. 54, 67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Federal courts have “broad discretion in conditioning a judgment granting habeas relief,” Hilton v. Braunskill, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987), and, as a practical matter, the granting of a writ often does not result in either “immediate” or “speedier” release. Pr. Op. at 934. The majority opinion thus declares a standard that is inconsistent with both the language of §§ 2241 and 2254 and our historical treatment of petitions for habeas corpus.
II
The majority attempts to justify its departure from statute and precedent by asserting that its holding is consistent with congressional intent and the Supreme Court’s “strong suggestion” that habeas relief and relief under § 1983 are mutually exclusive. Pr. Op. at 931. But today’s opinion misreads the pertinent cases and the Supreme Court’s jurisprudence, and it contorts the relationship between habeas and § 1983 that the Supreme Court explicated in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and its progeny.
A. The proper relationship between ha-beas and § 1983 is based on the familiar principle of statutory interpretation that “the specific governs the general.” See, e.g., Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 170, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007). Section 1983 provides a broad vehicle for relief from illegal state action in general, while the writ of habeas corpus is a remedy for relief from illegal confinement in particular. Preiser, 411 U.S. at 490, 93 S.Ct. 1827. Preiser held that the specific remedy provided by-the habeas statute “must override the general terms of § 1983.” Id. In other words, when prisoners directly challenge the fact or duration of their confinement, that challenge must be brought under habeas.
The justification for so limiting § 1983 actions is that the habeas remedy is “sufficiently comprehensive” to “demonstrate congressional intent to preclude the remedy of suits under § 1983” for certain claims by prisoners. Middlesex Cty. Sewerage Auth. v. Nat’l Sea Clammers Ass’n, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); Docken, 393 F.3d at 1026 n. 2. Those claims, held Preiser, are those that are “within the core of habeas corpus.” 411 U.S. at 487, 93 S.Ct. 1827 (emphasis added). Preiser defined that core to contain claims where “a state prisoner is challenging the very fact or duration of his physical imprisonment.” Id. at 500, 93 S.Ct. 1827. Preiser did not hold that habeas jurisdic *942 tion is confined to what it described as the “core” of habeas; had it meant to do so, its references to the “core” of habeas corpus, as distinct from the overall reach of the writ, would have been pointless. Preiser reinforced the limited nature of its holding by cautioning that the exact scope of the overlap between § 1983 and habeas was “not before us,” id.; had Preiser meant the “core of habeas corpus” to equate with the entire breadth of the writ, that caution would have been unnecessary. And as Justice Thomas noted in his dissent in Skinner v. Switzer, 562 U.S. 521, 538, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011), the Court “has never purported to fully circumscribe the boundaries of § 1983,” as distinct from habeas corpus.
The justification for limiting § 1983 out of consideration for habeas does not work in reverse. The existence of a broad statute does not imply a congressional desire to limit a more specific one, especially one largely enacted later.[4] “[T]he specific governs the general,” Long Island Care, 551 U.S. at 170, 127 S.Ct. 2339, not vice versa. Consistent with that precept, the Supreme Court’s cases since Preiser have focused on whether and to what extent § 1983 should be limited by habeas, not the other way around. See, e.g., Dotson, 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005); Skinner, 562 U.S. at 534, 131 S.Ct. 1289.
The majority opinion maintains these cases should be seen as “strongly suggesting” that habeas and § 1983 do not overlap at all, even as to asserted violations of constitutionally required procedures that, if corrected, could — but will not necessarily — result in earlier release. Pr. Op. at 930-31. This reading of the precedents relies primarily on three Supreme Court cases: Muhammad v. Close, 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004), Dotson, 544 U.S. at 74, 125 S.Ct. 1242, and Skinner, 562 U.S. at 521, 131 S.Ct. 1289. None of these cases focuses on limitations on habeas claims. Instead, each of these cases deals with limitations on actions brought under § 1983. See Skinner, 562 U.S. at 534, 131 S.Ct. 1289; Dotson, 544 U.S. at 81, 125 S.Ct. 1242; Muhammad, 540 U.S. at 754-55, 124 S.Ct. 1303.
Nor does the dicta in the three opinions regarding habeas cases, read in context, support the majority’s reading of the cases. For instance, the majority cites Muhammad’s statement that the claimant “raised no claim on which habeas relief could have been granted on any recognized theory,” and that the relief he sought would “not necessarily” have affected the duration of his confinement, to argue that habeas is not available for claims unless they necessarily challenge the duration of confinement. Pr. Op. at 929; Muhammad, 540 U.S. at 754-55, 124 S.Ct. 1303. But in Muhammad, the lower court had “expressly found or assumed that no good-time credits were eliminated by the pre-hearing action Muhammad called in question.” 540 U.S. at 754, 124 S.Ct. 1303. In *943 other words, there was not even the possibility of speedier release if Muhammad prevailed. Muhammad sought only compensatory and punitive damages for an alleged wrongful disciplinary action. Id. at 753. Muhammad thus does not suggest anything at all about a case in which the duration of a prisoner’s confinement might be affected by a prisoner’s claim.
Skinner and Dotson are similarly indeterminate, at best, as to potential limitations on habeas jurisdiction. Both cases concern whether a claim “may” be brought via § 1983, not whether it “must” be so brought because habeas is unavailable. Skinner, 562 U.S. at 524, 131 S.Ct. 1289; Dotson, 544 U.S. at 82, 125 S.Ct. 1242. Notably, Dotson, in explaining why the § 1983 claims there at issue could go forward, reprised the Preiser standard: “Because neither prisoner’s claim would necessarily spell speedier release, neither lies at ‘the core of habeas corpus.’ ” Dotson, 544 U.S. at 82, 125 S.Ct. 1242 (quoting Preiser, 411 U.S. at 489, 93 S.Ct. 1827). Dotson did not say, any more than did Preiser, that because of the character of the prisoner’s claim, they were outside the scope of habe-as corpus altogether.
Skinner confirmed that limitation on the observation in Dotson regarding habeas, stating that “[w]here the prisoner’s claim would not ‘necessarily spell speedier release,’ ... suit may be brought under § 1983.” 562 U.S. at 525, 131 S.Ct. 1289 (emphasis added). Like the language quoted above in Muhammad, the statement that such claims may be brought via § 1983 does not suggest that they may not be also brought in habeas.
Further, Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), a case the majority does not mention, affirmatively indicated that habeas petitions may be brought for relief other than speedier release from confinement. Boum-ediene considered the core capacities that a tribunal must retain to maintain an adequate substitute for a writ of habeas corpus. Boumediene noted that while a court “must have the power to order the conditional release of an individual unlawfully detained[,] ... release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.” Id. at 779, 128 S.Ct. 2229.
The year after Boumediene, and just two years before Skinner, the Supreme Court characterized Dotson as holding that “prisoners who sought new hearings for parole eligibility and suitability need not proceed in habeas” — which would be very odd phrasing if Dotson’s import was that prisoners with such claims cannot proceed in habeas. Dist.Attorney’s Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 66, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009) (emphasis added). And throughout these cases, the Court has asked consistently whether a claim “lies at the core of habeas corpus,” (emphasis added) phrasing that, as I observed earlier, necessarily indicates there is some area beyond this “core” in which a habeas claim may also lie. See, e.g., Dotson, 544 U.S. at 79, 125 S.Ct. 1242 (quoting Preiser, 411 U.S. at 487, 93 S.Ct. 1827) (internal quotation marks omitted).
To counter all of this precedent, the majority opinion (and, in part, Judge Hur-witz’s concurrence) rely on three words in a Skinner footnote that could, out of context, suggest that habeas is limited to its “core.” Quoting the same Dotson passage discussed above, Skinner states that “when a prisoner’s claim would not ‘necessarily spell speedier release,’ that claim does not lie at ‘the core of habeas corpus,’ and may be brought, if at all, under § 1983.” 562 U.S. at 535 n. 13, 131 S.Ct. 1289 (quoting Dotson, 544 U.S. at 82, 125 S.Ct. 1242).
Perhaps the phrase “if at all” could be read to suggest that such claims may only *944 be brought under § 1983, and therefore may not be brought under habeas. But this language could also be read to refer simply to whether the claim may be brought at all — i.e., whether the claim is otherwise viable. So, for example, a claim cannot be brought “at all” under § 1983 if the statute of limitations has run, or if the procedural requirements of the PLRA have not been complied with. Cf. Dotson, 544 U.S. at 87-88, 125 S.Ct. 1242 (Scalia, J., concurring) (enunciating a similar caveat). On that understanding, the Skinner sentence means that otherwise viable claims not at “the core of habeas corpus” may be brought under § 1983 — not that they must be.
Ambiguous dicta in a footnote is not enough to resolve the precise boundaries of habeas corpus and § 1983 — an issue the Supreme Court has explicitly noted and left unresolved for more than four decades, and that the Court several times has indicated does not lie at the boundary between claims that could result in earlier release and those that will. See Preiser, 411 U.S. at 500, 93 S.Ct. 1827. That same footnote, as well as Dotson itself, asserts that the Court has not “mov[ed] the line our cases draw,” confirming that neither Dotson or Skinner reached any new conclusions as to that line. 562 U.S. at 535 n. 13, 131 S.Ct. 1289 (quoting Dotson, 544 U.S. at 84, 125 S.Ct. 1242).
Skinner, Dotson, and the other relevant Supreme Court cases are thus entirely consistent with the notion that § 1983 actions should be limited out of a concern for encroaching on habeas jurisdiction, but that it is permissible for habeas actions to overlap somewhat with claims properly brought under § 1983. The Fifth, Sixth, and D.C. Circuits have held that there is some degree of permissible overlap between § 1983 and habeas. See, e.g., Aamer v. Obama, 742 F.3d 1023, 1033 (D.C.Cir. 2014); Adams v. Bradshaw, 644 F.3d 481, 482-83 (6th Cir.2011) (per curiam); Coleman v. Dretke, 409 F.3d 665, 669-70 (5th Cir.2005) (en banc) (per curiam). But see Hutcherson v. Riley, 468 F.3d 750, 754 (11th Cir.2006); Richmond v. Scibana, 387 F.3d 602, 605 (7th Cir.2004).
B. In addition to its reading of Supreme Court precedent, Judge Ikuta’s opinion, in a discussion joined by only a plurality of the court, asserts that its position is consistent with congressional intent. Pr. Op. at 931-32. But that discussion points to no language in the habeas statute supporting the standard it announces today. Instead, it suggests that by requiring one set of procedures for § 1983 claims under the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., and another set for habeas petitions brought pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, Congress indicated its intent to have the two statutes govern entirely separate regimes. Pr. Op. at 931-32.
The existence of distinct sets of procedures does not tell us that Congress intended to limit either procedure’s substantive scope. Rather, the evident intent was simply that to use either statute, a litigant must meet its procedural requirements.
Even if more could be made of the procedural dissimilarities between § 1983 and federal habeas corpus — which I do not think it can — the plurality gives no reason to think that it is habeas that should be limited, rather than § 1983. As I have noted, § 1983 has been the focus of all prior cases addressing the overlap between the two.
The plurality’s reliance on the PLRA and AEDPA is also ahistorical. PreisePs discussion of habeas and § 1983 was written in 1973, well before either the PLRA or AEDPA were enacted in the mid-1990s. Congress is generally assumed to be “thoroughly familiar with” Supreme Court prec *945 edents when it legislates. Edelman v. Lynchburg Coll., 535 U.S. 106, 117 n.13, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002) (quoting N. Star Steel Co. v. Thomas, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995)). If Congress had intended to weigh in on the longstanding discussion concerning the relationship between habeas and § 1983 via the PLRA, AEDPA, or both, it would surely have done so explicitly, rather than relying on judges’ ability to read tea leaves. Absent any provision in either statute addressing the question, the creation of different procedural requirements for the two different claims cannot be read to limit the substance of the habeas remedy-
More broadly, the PLRA’s restrictions on prisoner suits demonstrate the hazards of limiting habeas corpus due to potential overlap with other remedies. The writ of habeas corpus is protected by the Constitution. See U.S. Const, art. I, § 9, cl. 2. There is no such explicit protection for the remedy afforded by § 1983 (which, indeed, did not even exist until after the Civil War). As the PLRA shows, Congress can alter § 1983 at will, to make it more or less available to particular groups like prisoners. Relying on the existence of alternative statutory remedies to justify narrowing the breadth of habeas thus may create gaps that widen over time as Congress alters those remedies. This potential problem is made more likely if we read the existence vel non of other statutory schemes to indicate Congress’s implicit intent to limit habeas’s scope. Such an arrangement risks encroaching on the “grand purpose” of one of the most important remedies of our legal order. Boumediene, 553 U.S. at 780, 128 S.Ct. 2229 (quoting Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)).
Ill
The majority’s opinion also threatens the scope of habeas for federal prisoners. Such prisoners do not have recourse under § 1983. That statute applies only to violations undertaken “under color of’ state law. 42 U.S.C. § 1983; see, e.g., Ibrahim v. Dep’t of Homeland Sec., 538 F.3d 1250, 1257 (9th Cir. 2008).
The federal habeas statute, 28 U.S.C. § 2241 et seq., is the basic statute empowering courts to hear petitions by both federal and state prisoners.[5] Notably, we have heard many claims by federal prisoners petitioning under §2241 where success “would not necessarily lead to [their] immediate or earlier release from confinement.” Pr. Op. at 935. In Crickon v. Thomas, 579 F.3d 978, 982 (9th Cir. 2009), for instance, Jerry Crickon, a federal prisoner, brought a habeas petition challenging the BOP’s determination that he was categorically ineligible for an early release incentive program due to his prior conviction. We held the BOP’s failure to grtieulate its reasoning was a violation of the Administrative Procedure Act, and remanded for the BOP to reconsider Crickon’s eligibility. Id. at 988-89. Just as in Dotson, “[s]uceess *946 for [Crickon] ... mean[t] at most new eligibility review.” 544 U.S. at 82, 125 S.Ct. 1242. But that was no obstacle to Crickon’s habeas petition.
In Close v. Thomas, 653 F.3d 970 (9th Cir.2011), we heard a similar challenge brought by a federal prisoner under §2241. Christopher Close, the petitioner, challenged the criteria used to rank prisoners on a waitlist for a drug treatment program, because admission to the program could speed his eligibility for early release. Id. at 972-73. As the opinion noted, id. at 975, the potential acceleration of participants’ release was discretionary — in other words, admission to the program “would not necessarily spell immediate or speedier release.” Dotson, 544 U.S. at 81, 125 S.Ct. 1242. But Close’s claim was allowed to proceed via habeas petition nonetheless. See also Rodriguez, 823 F.3d at 1243, 2016 WL 3003423, at *4.
As Crickon, Close, and Rodriguez indicate, federal prisoners have been able to bring habeas claims alleging procedural defects to the parole process whose resolution would not necessarily result in a speedier release. This practice is longstanding. See, e.g., John v. U.S. Parole Comm’n, 122 F.3d 1278, 1285 (9th Cir. 1997); Benites v. U.S. Parole Comm’n, 595 F.2d 518, 520 & n. 1 (9th Cir.1979); see also Elliott v. United States, 572 F.2d 238, 239 (9th Cir.1978) (per curiam) (holding that a federal prisoner’s challenge to a parole board’s failure to give “serious consideration” to an application for parole is properly brought via habeas corpus).
Such cases will, presumably, continue to be allowed, as there is no alternative statutory remedy for federal prisoners, and so no possibility of statutory overlap. But the majority opinion points to no statutory language or precedent that suggests any difference in the substantive scope of habeas between federal and state prisoners for alleged constitutional violations. Nor does that opinion otherwise explain why the reach of § 2241(c) for federal prisoners should differ from the reach of the same statute for state prisoners.
For all the reasons discussed, I would hold that habeas corpus relief is available to any claimant whose success “could potentially affect the duration of their confinement.” Docken, 393 F.3d at 1031 (emphasis omitted). Such an approach is just as practically feasible as the standard in the majority opinion. In particular, it does not rely on the “probabilistic analysis” that opinion rejects. Pr. Op. at 934.
My approach would, to be sure, permit some overlap between habeas and § 1983, although this case does not require us to decide the exact extent of that overlap. But such overlap is not cause for concern. To succeed under either statute, prisoners will have to conform with the requisite procedures. The state has given us no reason that it would be better off in general if cases like this one were brought under § 1983. If anything, state governments usually argue for more cases to be brought in habeas rather than under § 1983, as federal habeas petitioners, unlike plaintiffs under § 1983, are usually required to exhaust state judicial remedies, see Osborne, 423 F.3d at 1053, and federal habeas courts are often required to defer to the results of these state proceedings. See 28 U.S.C. § 2254(d).
Notably, the rule adopted by the majority will not “give needed clarity to state prisoners.” Pr. Op. at 934. That rule departs from precedent and statute, and will generate confusion and delay among those seeking adjudication of their claims who mistakenly choose the wrong vehicle. When it comes to alleged procedural violations in particular, the majority’s an *947 nounced rule would seem to sweep up a significant number of claims within its reach, creating a trap for unwary prisoners who have not satisfied the PLRA’s distinct requirements. See 42 U.S.C. § 1997e.
In short, the majority’s standard, inconsistent with statute and precedent, will' unnecessarily create problems for years to come. I therefore dissent.

. Only some portions of Judge Ikuta’s opinion have the support of a majority of the en banc court. So it is the majority opinion in some respects and a plurality opinion in others. For clarity, I cite it in this dissent as the "Principal Opinion” ("Pr. Op.’’).

. Each of these examples counters the suggestion by both the majority and Judge Hurwitz’s concurrence that there exists “no case ... in which the Court has recognized habeas as the sole remedy, or even an available one, where the relief sought would neither terminat[e] custody, accelerate] the future date of release from custody, nor reduc[e] the level of custody.” Pr. Op. at 930 (quoting Skinner v. Switzer, 562 U.S. 521, 534, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011)) (internal quotation marks and citation omitted); Concurring Op. at 937-38 (same).

. Again, it is possible that habeas relief could be denied in a case such as this one on lack of prejudice grounds, if the prejudice standard appropriate to the circumstances were not met. The present issue, however, is whether the petitioner was entitled to bring a habeas petition at all.

. Section 1983 was enacted in. the Civil Rights Act of 1871 and has existed in largely the same form to this day. See Preiser, 411 U.S. at 476, 93 S.Ct. 1827; Civil Rights Act of 1871, ch. 22, 17 Stat. 13 (1871). Although there was a federal habeas statute before 1871, it was initially much more limited than the modern statute and has been amended many times since. See generally Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1042-93 (1970) (providing an overview of the history of federal habeas corpus). These amendments include legislation in 1966 inserting language that the Supreme Court noted "seem[ed] specifically to contemplate the possibility of relief other than immediate release from physical custody.” Carafas v. LaVallee, 391 U.S. 234, 239, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (discussing the 1966 amendment providing for "release from custody or other remedy"); see also 28 U.S.C. § 2243 (providing for disposition of habeas cases "as law and justice require”).

. Section 2241(a) provides that “[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.” Section 2241(c) specifies five categories of prisoners eligible for federal habeas. See 28 U.S.C. § 2241(c)(1)—(5). The important section for present purposes is 2241(c)(3), which makes available writs of habeas corpus to both federal and state prisoners “in custody in violation of the Constitution or laws or treaties of the United States.” Sections 2244, 2254, and 2255 spell out some substantive differences in the writ's scope for state and federal prisoners, as well as differences in the procedures required for state and federal prisoners to obtain the writ. Those differences are not relevant to the case at hand.